The STATE of Ohio, Appellee,

v.

BERRY, Appellant.

[Cite as *State v. Berry,* 167 Ohio App.3d 206, 2006-Ohio-3035.]

Court of Appeals of Ohio,
Second District, Greene County.

No. 2005–CA–107.

Decided June 16, 2006.

Betsy A. Boyer, Assistant Fairborn Prosecutor, for appellee.

Jon Paul Rion, for appellant.

---

FAIN, Judge.

{¶ 1} Defendant-appellant, Paul Berry, appeals from his conviction and sentence, following a no-contest plea to the charges of possession of criminal tools and possession of drug paraphernalia. Berry contends that the trial court erred by denying his motion to suppress evidence obtained as the result of an unlawful search and seizure of his residence. We agree with the trial court's conclusion that Fairborn firefighters and police officers acted reasonably in the course of events leading up to the discovery of what appeared to be a marijuana-growing apparatus in a closet in Berry's residence, which led, in turn, to the obtaining of a search warrant. Accordingly, the judgment of the trial court is affirmed.

## I

{¶ 2} In its decision overruling Berry's objections to the decision of the magistrate who heard Berry's motion to suppress, the trial court made the following findings:

{¶ 3} "On July 1, 2004, Sam Hamilton was power washing a backyard deck at the premises next door to Defendant's residence at 229 Woodlawn Drive, Fairborn, Ohio. While working on the deck, he heard someone screaming what sounded like, 'Mommy, Mommy, Mommy, help me, help me.' He could hear the screaming over the noise of the power washing. The screaming lasted approximately five to ten minutes. After approximately seven to eight minutes of the screaming, Mr. Hamilton went to the driveway in front of the residence at 229 Woodlawn Drive, Fairborn, Ohio, where he met Jill Cobb who resides across the street. Ms. Cobb advised Mr. Hamilton that she had knocked on the door and that nobody had answered. Furthermore, the screaming stopped when he arrived at the residence. At some point Mr. Hamilton did see someone peek out of a window for a second. Approximately one-half hour later Mr. Hamilton's wife brought him lunch and he relayed the story to her of what had happened. His wife said that somebody may have passed out inside and she called the police.

{¶ 4} "As a result of Mr. Hamilton's wife telephoning the police, the Fairborn Fire Department dispatched a medic crew to the residence on an emergency medical call. Furthermore, Officer Hiles of the Fairborn Police Department was also dispatched on a medic assist call. The Fairborn firemen and medic crew arrived at the residence first; knocked on the door, but did not receive a response; and looked around the exterior of the home and determined that nobody was there. The policy of the Fire Department is that if it has an emergency call and the firefighters do not receive a response, then the firefight-

ers try to make entry. Therefore, a firefighter was boosted into an open window and gained entry. The firemen searched the home for someone who needed medical assistance and found nobody on a cursory walk-through. Lt. Matt Kochensparger of the Fairborn Fire Department exited the house and met Ms. Cobb who advised the lieutenant that she had heard screaming coming from inside the house earlier in the day. Therefore, the lieutenant ordered a second search and ordered that the firemen look for a victim of a violent crime who could be under a bed or in a closet.

{¶ 5} "During the second search, Officer Hiles of the Fairborn Police Department entered the residence to assist in the search. At that time the search was almost finished when firefighter Daugherty approached him and advised that they had found something odd. He led Officer Hiles to a bedroom with an open closet door which contained a large blue Rubbermaid container approximately two and one-half to three feet by one and one-half feet by one and one-half feet with a lid and an extension cord. It also had a light source glowing from within it. The firefighter had opened the Rubbermaid container concerned that it might be a fire hazard due to the glowing light source. Inside the Rubbermaid container was one or two grow lights, an operating fan, and several burlap golf ball-sized sacks containing dirt. Officer Hiles had a suspicion that it was a marijuana grow operation and requested that the firefighters step outside of the house. Once outside, Officer Hiles radioed his sergeant who arrived shortly thereafter. At the time that the sergeant arrived Officer Hiles was speaking with Miss Cobb. Officer Hiles and the sergeant then went inside the house and the officer showed the sergeant the container and its contents. They then exited the residence and called the Drug Enforcement Task Force which arrived 30–45 minutes later. Detective Mader of the Drug Enforcement Task Force ordered that the residence be secured and obtained a search warrant to search the remainder of the house."

{¶ 6} We have reviewed the transcript of the suppression hearing, and there is evidence in the record to support all of the findings quoted above.

{¶ 7} Berry was arrested and charged with possession of criminal tools, in violation of R.C. 2923.24, a first-degree misdemeanor; possession of drug paraphernalia, in violation of R.C. 2925.14, a fourth-degree misdemeanor; cultivation of marijuana, in violation of R.C. 2925.04, a minor misdemeanor; and possession of marijuana, in violation of R.C. 2925.11, a minor misdemeanor.

{¶ 8} Berry moved to suppress the evidence found in his residence, contending that it was obtained as the result of an unlawful search and seizure. With his consent, his motion to suppress was heard before a magistrate, who issued a decision denying his motion. Berry then objected to the magistrate's decision. His objection was overruled by the trial court, which entered its decision and

judgment adopting the decision of the magistrate and overruling Berry's motion to suppress.

{¶ 9} Thereafter, Berry pleaded no contest to the charges. Although we have not found the actual disposition of the charges in our record, Berry asserts, and the state does not dispute, that Berry was found guilty of the charges and sentenced to three years of probation. For purposes of this appeal, we will take that to be the judgment of the trial court. From that judgment, Berry appeals.

## II

{¶ 10} Berry's sole assignment of error is as follows:

{¶ 11} "The trial court erred in denying the motion to suppress because, for a number of reasons, the exigent circumstances exception to the warrant requirement is inapplicable."

{¶ 12} Berry acknowledges that exigent circumstances are a well-established exception to the warrant requirement of the Fourth Amendment to the United States Constitution regulating searches and seizures (see, also, Section 14, Article I of the Ohio Constitution) and that exigent circumstances include "reasonable grounds to believe that an injured or seriously ill person is being held within," but Berry argues that the state failed to establish the existence of those grounds in this case. Berry relies upon the length of time that had elapsed from the time that Hamilton and Cobb heard screaming to support his argument that any exigent circumstances had passed.

{¶ 13} We are not persuaded. It appears that no more than an hour and a half elapsed between the time of the screaming, said by Cobb to have been about 12:30 to 1:00 in the afternoon, until Hiles was dispatched to the scene at 1:56 p.m. In our view, it was entirely reasonable for the firefighters who responded to the scene to enter the home after they received no response to their knocking, to see if anyone inside the home was injured and required medical assistance. After an initial, somewhat cursory, search disclosed no one present inside the house, Cobb told Kochensparger that someone had been screaming for help from inside the house. This led Kochensparger to order another, more thorough, search, because Cobb's information caused him to be concerned that a victim of a violent crime might be injured and disabled inside the house, in a less visible location, under a bed, for example, or in a closet. Again, we conclude that this was a reasonable search conducted in response to reasonable grounds for believing that an injured or seriously ill person was somewhere in the house. "Pursuant to that rule [the exigent circumstances or 'emergency' exception to the warrant requirement], a police officer, even absent a warrant or probable cause, may lawfully enter a structure, including a private home, when the totality of the

facts and circumstances known to the officer gives rise to a reasonable belief that immediate entry is necessary to either protect that property or assist people inside who may be in danger or in need of immediate aid." *State v. Overholser* (July 25, 1997), Clark App. No. 96–CA–0073, 1997 WL 451473, citing Ringel, Searches, Seizures, Arrests and Confessions, Section 10.5(a); Katz, Ohio Arrest, Search and Seizure, Section 10.01–10.03.

{¶ 14} Finally, Berry argues that even if the intrusions into his residence were justified, firefighter Daugherty had no right to open the Rubbermaid container because he could have alleviated his concern that whatever was inside was a fire hazard by disconnecting the extension cord from the wall outlet supplying electricity. We are unpersuaded by this argument for three reasons. First of all, electronic equipment containing capacitors—television sets, for example— retain potentially dangerous amounts of electrical energy for significant periods of time after being disconnected from an external supply of electrical current. Second, the glowing light within the container could have led Daugherty to a legitimate concern that some object or objects in the container were already incandescent to a hazardous degree. Third, Daugherty may have had a legitimate concern that the device within the container was essential for some reason—a heat source for medicine that must be maintained above a specified temperature, for example, or a crucial timing device—so that it would have been irresponsible to have simply unplugged it without determining what it was. Under the circumstances, we conclude that Daugherty's opening of the container was not only justified, but his failure to have investigated it to see what it was would probably have been a dereliction of his duty under the circumstances.

{¶ 15} Berry makes no argument that the firefighter and police officers acted unlawfully once the Rubbermaid container was opened and the contents viewed, and we are aware of no argument that could be made. Once it was apparent that the contents might be evidence of criminal activity, the officers withdrew from the house, secured it, and obtained a search warrant, in compliance with the Fourth Amendment.

{¶ 16} Berry's sole assignment of error is overruled.

## III

{¶ 17} Berry's sole assignment of error having been overruled, the judgment of the trial court is affirmed.

*Judgment affirmed.*

BROGAN and DONOVAN, JJ., concur.