OPINION
{¶ 1} Joseph Goldick was found guilty by a jury in the Montgomery County Court of Common Pleas of aggravated burglary and felonious assault and was sentenced to an aggregate term of ten years in prison. Goldick appeals from his conviction.
 {¶ 2} We find that Goldick's convictions were not against the manifest weight of the *Page 2 
evidence, that Goldick was not denied the effective assistance of counsel, and that the alleged prosecutorial misconduct did not affect the outcome of the case. We also conclude that the indictment stated the mens rea for aggravated burglary and thus did not violate State v.Colon, 118 Ohio St.3d 26, 2008-Ohio-1624 and State v. Colon,119 Ohio St.3d 204, 2008-Ohio-3749. There was no cumulative error. The judgment of the trial court will be affirmed.
 I {¶ 3} In the early morning hours of July 8, 2007, an intruder kicked down the door of Gerald Skapik's apartment at 2116 Bellefontaine Avenue in Dayton and beat him. Skapik had known Goldick for many years and identified him as the perpetrator.
 {¶ 4} On September 25, 2007, Goldick was indicted for aggravated burglary and felonious assault. Goldick pled not guilty and filed a notice of alibi. He was tried by a jury on December 18, 19, and 20, 2007, and was found guilty of both offenses. He was sentenced to ten years for aggravated burglary and eight years for felonious assault, with the sentences to be served concurrently.
 {¶ 5} Goldick raises six assignments of error on appeal. We will address these assignments in an order that facilitates our discussion.
 II {¶ 6} Goldick's sixth assignment of error states:
 {¶ 7} "THE INDICTMENT FOR AGGRAVATED BURGLARY IS VOID SINCE IT FAILS TO INDICATE A CULPABLE MENTAL STATE."
 {¶ 8} Goldick contends that his conviction for aggravated burglary must be vacated because the indictment did not state the mens rea for that offense, in violation of State v. Colon, *Page 3 118 Ohio St.3d 26, 2008-Ohio-1624 (" Colon I ") and State v. Colon,119 Ohio St.3d 204, 2008-Ohio-3749 ("Colon II "). Colon I held that a robbery indictment for a violation of R.C. 2911.02(A)(2) is defective if it fails to state that the physical harm was recklessly inflicted, threatened, or attempted because, in omitting the mens rea, the indictment omits one of the essential elements of the crime. Colon Iat ¶ 10. Colon II narrowly limited the holding in Colon I
 {¶ 9} Goldick claims that his indictment for aggravated burglary likewise failed to state the mens rea, but the record does not support this contention.
 {¶ 10} Count One of the indictment stated that, on July 8, 2007, Goldick, "by force, stealth or deception, did trespass in an occupied structure * * * when another person, other than an accomplice of the offender, was present, with purpose to commit in the structure * * * any criminal offense, to wit: felonious assault, and did then inflict or attempt or threaten to inflict physical harm to another * * *."
 {¶ 11} We have previously held that such language, which tracks the language of the aggravated burglary statute, R.C. 2911.11(A), includes two mental states. "First, knowingly is incorporated by reference in the predicate offense of trespass. Second, the mental state of purposefully is written in the statute." State v. Day, Clark App. No. 07-CA-139, 2009-Ohio-56, at ¶ 23, citing State v. Davis, Cuyahoga App. No. 90050,2008-Ohio-3453; State v. Smith, Montgomery App. Nos. 21463 and 22334,2008-Ohio-6330, at ¶ 76. On this basis, we have rejected the assertion that the Colon holdings apply to an aggravated burglary indictment that tracks this language. Day at ¶ 23; Smith at ¶ 76
 {¶ 12} Goldick's sixth assignment of error is overruled. *Page 4 
 III {¶ 13} Goldick's first assignment of error states:
 {¶ 14} "APPELLANT'S CONVICTION IS NOT SUPPORTED BY SUFFICIENT EVIDENCE AND IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."
 {¶ 15} Although Goldick's statement of this assignment of error purports to challenge both the sufficiency and the weight of the evidence, the substance of his argument attacks only the weight of the evidence. We will address his assignment accordingly.
 {¶ 16} When evaluating whether a conviction is against the manifest weight of the evidence, the appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider witness credibility, and determine whether, in resolving conflicts in the evidence, the trier of fact "clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." State v. Thompkins, 78 Ohio St.3d 380, 387,1997-Ohio-52, citing State v. Martin (1983), 20 Ohio App.3d 172, 175. "A weight of the evidence argument challenges the believability of the evidence and asks which of the competing inferences suggested by the evidence is more believable or persuasive." State v. Wilson, Montgomery App. No. 22581, 2009-Ohio-525, at ¶ 12. A judgment of conviction should be reversed as being against the manifest weight of the evidence only in exceptional circumstances. Martin, 20 Ohio App.3d at 175.
 {¶ 17} The state offered the following evidence at trial:
 {¶ 18} Skapik testified that he had been acquainted with Goldick and his family for many years and that he also knew Goldick's former wife and current girlfriend, Penny Griffin Goldick ("Griffin"). Skapik stated that he had asked Griffin out on dates *Page 5 
in the past, but not in recent years. Skapik, Goldick, Griffin, and two other acquaintances, Bo and Cynthia Webb, had been at a picnic together on Saturday, July 7, 2007. Goldick, Griffin, and the Webbs had also stopped by Skapik's apartment for a brief and uneventful visit that evening.
 {¶ 19} According to Skapik, he awoke in the early morning hours of July 8 to the sound of pounding on his door. Through the peephole, he could see that Goldick was kicking his apartment door. Goldick eventually broke down the door. After entering the apartment, Goldick knocked Skapik over a coffee table, grabbed his head, and beat him for approximately five minutes while asking questions about Griffin. Skapik testified that Goldick held him by his hair, and hit and kicked him about the head, stomped on his knee and hand, walked through the apartment calling for Griffin, and then left.
 {¶ 20} After Goldick left the apartment, Skapik called the police. When they responded to his apartment, Skapik refused medical treatment because he did not want to pay for it, preferring to go to the Veterans' Administration the next day. Skapik did not remember talking to the police officer about allowing evidence technicians into his apartment, but the responding officer, Jeffrey Thomas, testified that Skapik did not want the technicians called because he did not want the inconvenience of waiting for them in the middle of the night.
 {¶ 21} Although Skapik was the only witness to Goldick's involvement in the crime, Officer Thomas testified that he observed evidence of a disturbance in the apartment, including blood on the floor, a severely damaged door with a deadbolt missing, and Skapik's "very prevalent" injuries. *Page 6 
 {¶ 22} On the morning of Sunday, July 8, 2007, Cynthia Webb awoke to find Goldick asleep outside her house. She testified that, when she went to get her newspaper, she could not open the door of her house because Goldick was asleep just outside the door. According to Cynthia, Goldick wore no shoes or shirt at the time, and he stated "I think I fucked up last night," claiming that he had "smacked" Skapik. Bo Webb likewise reported that, when he saw Goldick in his kitchen that morning (after Cynthia had let him in), Goldick stated that he had screwed up and "smacked" Skapik during the night. Bo told Goldick that he should apologize to Skapik.
 {¶ 23} A short time later, Bo went with Goldick to Skapik's apartment. Skapik's sister, Lynn Rae Skapik Smith, also went to the apartment that morning. Bo Webb and Smith testified that Skapik's face was badly bruised and swollen. They also stated that Goldick apologized to Skapik at that time.
 {¶ 24} Smith took her brother to the Veterans Administration on Monday, July 9, because he had not felt up to going on Sunday. When Skapik sought medical attention, he learned that his nose was broken and both cheekbones were shattered. He also had a concussion and two broken ribs. Skapik further testified that his dentures had been broken into eight pieces, causing significant lacerations in his mouth. He could barely walk for a week, took pain medicine for two weeks, and could not eat solid food for two weeks until his dentures were replaced and his mouth healed. Smith testified that her brother had black eyes for weeks and still has trouble with his knee as a result of the attack. Cynthia Webb testified that she helped Skapik for several weeks because of his injuries, including his inability to walk.
 {¶ 25} Skapik and the Webbs testified that there had not been much drinking at *Page 7 
the picnic the day before the attack. Officer Thomas also stated that Skapik did not appear to be under the influence of alcohol when Thomas responded to his apartment.
 {¶ 26} Skapik filed a complaint with Detective Richard Davidson on July 10. He did not mention Goldick's apology at that time.
 {¶ 27} Goldick presented testimony from his mother, Anita Good, and from Griffin. Both women stated that, on July 7, they had spent the night at Good's house with Goldick and that he had not left at any time. Griffin also denied that she had left the house that night. Griffin stated that she and Goldick shared a bed and that she slept "like a bear cub" with Goldick's arms wrapped tightly around her such that she would have known if he had gotten out of bed. Good also testified that it was unlikely anyone could have left the house during the night without her knowledge, and that she had not heard anything noteworthy during the early morning hours of July 8. Griffin claimed that when she, Goldick, and the Webbs visited Skapik in the evening of July 7, she could smell that Skapik had been drinking. She also claimed that Skapik had asked for money and had been verbally abusive.
 {¶ 28} Goldick argues that his conviction was against the manifest weight of the evidence for several reasons: Skapik was the only witness, yet he refused medical treatment and the assistance of the evidence technicians; Skapik did not report Goldick's alleged apology to police when he filed his complaint; the witnesses' testimony about the details of Goldick's alleged apology were inconsistent; Skapik failed to appear for some court dates; Cynthia Webb's testimony that Goldick was not wearing shoes when she saw him on Sunday morning made it unlikely that he could have caused enough force to break down a door; and no witnesses observed any *Page 8 
injuries to Goldick's hands the day after the attack.
 {¶ 29} The state presented ample evidence from which the jury could have reasonably concluded that Goldick had burglarized Skapik's apartment and assaulted him. Because the jury sees and hears the witnesses at trial, we must defer to the its decisions whether, and to what extent, to credit the testimony of particular witnesses. State v.Lawson (Aug. 22, 1997), Montgomery App. No. 16288. Skapik's injuries were undisputed, Skapik testified that the injuries were inflicted by Goldick after Goldick broke into his apartment, and several other witnesses testified that Goldick had admitted to "screwing up" by "smacking" Skapik on the night in question. If the jury credited this testimony, as it was entitled to do, it could have reasonably concluded that Goldick was guilty of aggravated burglary and felonious assault.
 {¶ 30} The jury was not required to infer from Skapik's refusal to seek immediate medical treatment or to request an evidence crew that he was lying about the night's events. Skapik and his sister explained that financial concerns had made him reluctant to seek medical services anywhere other than the VA, and Officer Thomas stated that officers do not typically insist on an evidence crew in this type of case if the victim is coherent and does not want to be inconvenienced. The jury also could have reasonably concluded that Skapik's failure to report Goldick's apology, Goldick's bare feet on Sunday morning, and the absence of evidence that Goldick's hands had been injured were not probative or entitled to great weight. Skapik's alleged failure to appear at some of the court dates did not compel the jury to conclude that he was being dishonest or uncooperative, as Goldick seems to suggest, especially in light of Skapik's sister's testimony that he had missed some court dates because one of *Page 9 
their brothers had committed suicide while the proceedings were pending. Finally, the jury could have reasonably concluded that the testimony of Goldick's mother and girlfriend was not entitled to significant weight. The testimony of both women was directly contradicted by several other witnesses, and each had a personal interest in keeping Goldick out of jail.
 {¶ 31} The jury did not clearly lose its way and create a manifest miscarriage of justice in convicting Goldick of aggravated burglary and felonious assault. Goldick's conviction was not against the manifest weight of the evidence.
 {¶ 32} Although Goldick did not present any argument challenging the sufficiency of the evidence, his assignment suggests that he believes there was insufficient evidence to support his conviction. When reviewing whether the State has presented sufficient evidence to support a conviction, the relevant inquiry is whether any rational finder of fact, after viewing the evidence in a light most favorable to the State, could have found the essential elements of the crime proven beyond a reasonable doubt. State v. Dennis, 79 Ohio St.3d 421, 430,1997-Ohio-372, citing Jackson v. Virginia (1979), 443 U.S. 307, 319,99 S.Ct. 2781, 61 L.Ed.2d. 560. Based on the evidence presented, it is clear that a rational jury could have found the essential elements of aggravated burglary and felonious assault beyond a reasonable doubt. Goldick's conviction was supported by sufficient evidence.
 {¶ 33} The first assignment of error is overruled.
 IV {¶ 34} We will consider Goldick's second and third assignments of error together. They state: *Page 10 
 {¶ 35} "THE APPELLANT WAS DENIED A FAIR TRIAL DUE TO THE ADMISSION OF PROHIBITED PRIOR BAD ACTS EVIDENCE AND TESTIMONY THAT IS COLLATERAL, UNSUBSTANTIATED AND MORE PREJUDICIAL THAN PROBATIVE."
 {¶ 36} "THE APPELLANT'S CONVICTIONS MUST BE REVERSED DUE TO PROSECUTORIAL MISCONDUCT."
 {¶ 37} Goldick claims that the prosecutor acted improperly in eliciting testimony about his history of domestic violence against one of his alibi witnesses, his past contacts with the police department, and suggestions that he might have encouraged a witness to testify falsely. He argues that this pattern of conduct deprived him of a fair trial and that he should have been granted a mistrial. We will consider each of these incidents of alleged misconduct in turn.
 {¶ 38} "[T]he trial judge is in the best position to determine whether the situation in [the] courtroom warrants the declaration of a mistrial." State v. Glover (1988), 35 Ohio St.3d 18, 19; see, also,State v. Williams, 73 Ohio St.3d 153, 167, 1995-Ohio-275. This court will not second-guess such a determination absent an abuse of discretion. State v. Sage (1987), 31 Ohio St.3d 173, 182. Moreover, mistrials need be declared only when the ends of justice so require and a fair trial is no longer possible. State v. Franklin (1991),62 Ohio St.3d 118, 127, citing Illinois v.Somerville (1973), 410 U.S. 458,462-463, 93 S.Ct. 1066, 35 L.Ed.2d 425.
 {¶ 39} In analyzing claims of prosecutorial misconduct, the test is "whether remarks were improper and, if so, whether they prejudicially affected substantial rights of the accused." State v. Jones,90 Ohio St.3d 403, 420, 2000-Ohio-187, citing State v. *Page 11 Smith (1984), 14 Ohio St.3d 13, 14. "The touchstone of analysis `is the fairness of the trial, not the culpability of the prosecutor.'" Id., quoting Smith v. Phillips (1982), 455 U.S. 209, 219, 102 S.Ct. 940,71 L.Ed.2d 78. Where it is clear beyond a reasonable doubt that a jury would have found the defendant guilty even absent the alleged misconduct, the defendant has not been prejudiced, and his conviction will not be reversed. State v. Powell, 176 Ohio App.3d 28,2008-Ohio-1316, at ¶ 53.
 {¶ 40} Goldick identifies two incidents of prior bad acts testimony, which is prohibited by Evid. R. 404(B). Goldick's girlfriend, Griffin, testified on direct examination that he had been with her throughout the night of the attack. On cross-examination, the state elicited testimony from Griffin that Goldick had "loosened" her lower teeth in a 2003 incident of domestic violence. She denied that he had knocked her teeth out, stating that although Goldick had "loosened" the teeth, she had lost them in a car accident. The prosecutor also elicited testimony that Goldick had been convicted of domestic violence against Griffin in 2005. When Goldick objected at the end of this exchange and moved for a mistrial, the prosecutor stated that she had been trying to show Griffin's motive to fabricate testimony and to lie for Goldick because she was afraid of him. The prosecutor insisted that she was offering this evidence to show the witness's fear, not that Goldick is a bad person: "I'm trying to show that she is not honest, because she is afraid of him and she is lying for him and this is what she has been doing for the past four or five years."
 {¶ 41} When Goldick objected, the court initially expressed concern about the lack of foundation for the state's questions and offered to do some research on the matter. Then, at the end of Griffin's cross-examination, the court instructed the jury as *Page 12 
follows: "`[T]here was a question asked earlier about a domestic violence situation and an answer came out that was objected to. I am going to instruct you that you must disregard that answer and it will be stricken from the record. Earlier there was a question about domestic violence as well that did come out, and there was no objection. However, I am going to ask you to not consider the prior conviction for any purpose in this matter. Okay. Although the answer won't be stricken you are not to consider it for the purposes of any prior conviction on the part of the defense. And it is not evidence. Of course, in the act in this particular incidence. That is not what it is used for. It is not evidence of any violence in this particular situation."
 {¶ 42} The trial court did not abuse its discretion in handling Goldick's objection as it did. In this case, the discussion of Goldick's prior arrests was brief and was promptly followed by a curative instruction. The trial court also gave a general instruction before the jury's deliberations reminding the jury not to consider any statement it had been told to disregard. The jury can be presumed to have followed the court's instructions, including instructions to disregard testimony.State v. Zuern (1987), 32 Ohio St.3d 56, 62. The trial court did not abuse its discretion in denying the request for a mistrial. SeeState v. Glenn (1986), 28 Ohio St.3d 451, 455; see State v. Warren
(1990), 67 Ohio App.3d 789, 799.
 {¶ 43} Goldick also claims that the prosecutor asked a prejudicial question when she asked Officer Thomas how the police had located Goldick after Skapik named him as the perpetrator. The prosecutor stated: "Tell the jury in as much detail as you recall what you did to try to find Joe Goldick on July 8?" In response, Detective Thomas stated that he had found information about Goldick in the "Dayton Information *Page 13 
Management System, or MIS, [sic]" which led him to 17 Naas Place. The prosecutor followed up by asking: "And why did you pick 17 Naas? Why would you look for Joseph Goldick there?" Officer Thomas responded that MIS "had him at that location through the various contacts the Dayton Police Department has had" with him. The defense did not object to these questions or the answers. When the jurors were permitted to submit questions to be asked of Officer Thomas, they submitted at least two questions seeking more information about Goldick's MIS records. The prosecutor commented, in a sidebar, that "you don't want to go there" because of the substantial number of contacts reflected in the MIS, and defense counsel agreed. The questions seeking more information about Goldick's contacts with the police were not posed to Officer Thomas.
 {¶ 44} Because Goldick did not object at trial to the questions about how the police located him, we review for plain error. Crim. R. 30(A);State v. Stallings, 89 Ohio St.3d 280, 292, 2000-Ohio-164. Plain error has been defined as "obvious error prejudicial to a defendant * * * which involves a matter of great public interest having substantial adverse impact on the integrity of and the public's confidence in judicial proceedings." State v. Endicott (1994), 99 Ohio App.3d 688, 694.
 {¶ 45} Goldick claims that the questions submitted by the jurors make it clear that the jury had been "irreversibly tainted" and that a fair trial was not possible. We disagree. The fact that the jurors were curious about the nature of Goldick's past contacts with the police does not require us to conclude that the jury assumed the worst about Goldick and denied him a fair trial. Although we recognize that the state's question invited the admission of prejudicial evidence and there was no legitimate *Page 14 
basis for the state to offer evidence about Goldick's presence in the MIS system, we cannot conclude that this evidence had a substantial adverse impact on the integrity of the judicial proceedings. Moreover, Goldick did not ask for a curative instruction. The trial court was in the best position to assess whether Goldick had been unduly prejudiced by the reference to his prior contact with the police, and it did not abuse its discretion in concluding that the prejudice, if any, was not significant.
 {¶ 46} We note that Crim. R. 30(A) and State v. Comer (1990),50 Ohio St.3d 206, require full and complete instructions to the jury after argument. The trial court properly instructed the jury at the outset of trial not to draw any adverse inferences from the court's failure to ask a question submitted by a juror, State v. Fisher, 99 Ohio St.3d 127,135, 2003-Ohio-2761, ¶ 29, but it did not repeat this instruction after argument. Goldick, however, did not request such an instruction or object to its omission, waiving all but plain error. For the reasons we have already discussed, we find no plain error.
 {¶ 47} Finally, Goldick objects to the prosecutor's attempts to show that Griffin had been coached about how to testify on his behalf and that Griffin had called two of the state's witnesses "two-faced liars" in the hall outside the courtroom on the first day of trial. During cross-examination, Griffin denied making such statements. When the prosecutor attempted to substantiate these claims on rebuttal by calling Skapik's sister, Smith, who had heard Griffin's conversations in the hall, her testimony was noncommittal. The statements by Griffin that were suggested by the state's questions on cross-examination were not substantiated by Smith. The testimony on this point was somewhat vague and confusing, but the trial court declined to grant a mistrial, leaving it *Page 15 
to the jury to sort out what the testimony had been. The trial court did not abuse its discretion in its handling of this matter.
 {¶ 48} The prosecutor's elicitation of testimony about Goldick's prior convictions and his MIS records, as well as her attempt to impeach Goldick's alibi witness, did not prejudicially affect Goldick's substantial rights. Even assuming, for the sake of argument, that the prosecutor acted improperly in pursuing these lines of questioning, we are unpersuaded that the evidence to which Goldick objects affected the outcome when viewed in the context of the entire trial. The trial court did not abuse its discretion in concluding that the errors of which Goldick complains did not affect the outcome of his trial. Goldick's request for a mistrial was properly denied.
 {¶ 49} The second and third assignments of error are overruled.
 V {¶ 50} Goldick's fourth assignment of error states:
 {¶ 51} IV. "APPELLANT WAS DENIED A FAIR TRIAL DUE TO THE INEFFECTIVE ASSISTANCE OF COUNSEL."
 {¶ 52} Goldick claims that counsel was ineffective in failing to object to evidence of his prior bad acts. In particular, he claims that the jury's questions about his presence on the Dayton MIS demonstrate that he was prejudiced by counsel's failure to effectively attack this evidence.
 {¶ 53} To reverse a conviction based on ineffective assistance of counsel, it must be demonstrated that trial counsel's conduct fell below an objective standard of reasonableness and that his errors were serious enough to create a reasonable probability that, but for the errors, the result of the trial would have been different. *Page 16 Strickland v. Washington (1984), 466 U.S. 668, 104 S.Ct. 2052,80 L.Ed.2d 674; State v. Bradley (1989), 42 Ohio St.3d 136.
 {¶ 54} The jury's interest in knowing more about Goldick's prior contacts with the police, as evidenced by the questions submitted to the judge after Officer Thomas testified, does not establish a reasonable probability that the outcome of the trial would have been different if counsel had challenged this testimony. The scope of questioning is generally a strategic matter left to the discretion of defense counsel.State v. Elmore, 111 Ohio St.3d 515, 2006-Ohio-6207, at ¶ 116. Counsel could have concluded, as a matter of trial strategy, that drawing additional attention to Goldick's prior contacts with the police by objecting to this testimony would have been more problematic than helpful.
 {¶ 55} Although this assignment focuses primarily on the MIS records, we note that counsel did object to the questions about Goldick's prior convictions, and the jury was instructed not to consider this evidence. With respect to the testimony about Griffin's conversations on her cell phone in the hall and whether those conversations supported an inference that she had been coached about how to testify, we conclude that the testimony was so muddled that it is difficult to draw any conclusion about what Griffin might have said. Due to the nature of this testimony, we are unpersuaded that it was prejudicial or that counsel could have more effectively refuted it.
 {¶ 56} There is no basis to conclude that counsel's conduct fell below an objective standard of reasonableness or that, but for the alleged errors, the outcome of the trial would have been different. As such, we reject Goldick's claim that he was denied the effective assistance of counsel. *Page 17 
 {¶ 57} The fourth assignment of error is overruled.
 VI {¶ 58} Goldick's fifth assignment of error states:
 {¶ 59} V. "CUMULATIVE ERRORS DEPRIVED THE APPELLANT OF A FAIR TRIAL."
 {¶ 60} Goldick contends that the cumulative errors presented in his second, third, and fourth assignments of error denied him a fair trial. However, we have concluded that none of the errors identified by Goldick affected the outcome of his trial. Although the Supreme Court of Ohio has stated that numerous harmless errors may cumulatively deprive a defendant of a fair trial and thus may warrant the reversal of his conviction, State v. DeMarco (1987), 31 Ohio St.3d 191, paragraph two of the syllabus, upon a complete review of the record, we cannot conclude that prejudicial error exists in this case.
 {¶ 61} The fifth assignment of error is overruled.
 VII {¶ 62} The judgment of the trial court will be affirmed.
DONOVAN, P.J. and FAIN, J., concur. *Page 1