The STATE of Ohio, Appellee,

v.

JONES, Appellant.

[Cite as *State v. Jones*, 183 Ohio App.3d 839, 2009-Ohio-4606.]

Court of Appeals of Ohio,
Second District, Miami County.

No. 2008 CA 26.

Decided Sept. 4, 2009.

840

Gary Nasal, Miami County Prosecuting Attorney, and Anthony E. Kendell, Assistant Prosecuting Attorney, for appellee.

Mark J. Bamberger, Ph.D., for appellant.

---

FROELICH, Judge.

{¶ 1} Antonio Jones pleaded no contest to possession of crack cocaine and tampering with evidence after the trial court overruled his motion to suppress evidence. He was sentenced accordingly. Jones appeals, challenging the denial of his motion to suppress.

{¶ 2} We conclude that the trial court erred in overruling Jones's motion to suppress evidence. Although the trial court correctly determined that there was probable cause to arrest Jones based on his alleged prior participation in controlled drug buys, the trial court committed plain error when it failed to recognize that the officers were required to obtain an arrest warrant when the significant passage of time made it practicable to do so. The judgment of the trial court will be reversed and the cause remanded for further proceedings.

I

{¶ 3} At some point prior to January 2008, Jones was involved in controlled drug purchases facilitated by a confidential informant and monitored and observed by Troy police officers. The officers did not immediately arrest Jones, but they believed that they had probable cause to do so. They did not seek or obtain an arrest warrant. Sometime later, officers located Jones through a tip from their confidential informant, which resulted in a traffic stop of a vehicle in which Jones was traveling. Jones was immediately arrested. While Jones was standing, handcuffed, behind the car in which he had been stopped, the arresting officer conducted a pat-down search and discovered crack cocaine and marijuana in baggies in Jones's pockets. The officer placed the items on the trunk of the car in front of Jones. When the arresting officer briefly looked away, Jones bent over, took the baggie of crack cocaine in his mouth, and unsuccessfully attempted to swallow it.

{¶ 4} Jones was subsequently charged with possession of crack cocaine and with tampering with evidence. He filed a motion to suppress the evidence obtained as a result of his stop and arrest, but the motion was overruled after a hearing. Thereafter, Jones pleaded no contest to both offenses and was convicted and sentenced to imprisonment on each offense, to be served concurrently.

{¶ 5} Jones raises two assignments of error on appeal.

## II

{¶ 6} Jones's first assignment of error states:

{¶ 7} "The trial court erred when it allowed into evidence material that should have been suppressed."

{¶ 8} Jones contends that his constitutional rights were violated because the police officers lacked probable cause to stop or to arrest him and that therefore, the evidence seized as a result of his stop and arrest should have been suppressed.

{¶ 9} The Fourth Amendment to the United States Constitution states that "the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated." "Since the Fourth Amendment speaks equally to both searches and seizures, and since an arrest, the taking hold of one's person, is quintessentially a seizure, it would seem that the constitutional provision should impose the same limitations upon arrests that it does upon searches. Indeed, as an abstract matter an argument can be made that the restrictions upon arrest perhaps should be greater. A search may cause only annoyance and temporary inconvenience to the law-abiding citizen, assuming more serious dimension only when it turns up evidence of criminality. An arrest, however, is a serious personal intrusion regardless of whether the person seized is guilty or innocent. * * * Logic therefore would seem to dictate that arrests be subject to the warrant requirement at least to the same extent as searches." *United States v. Watson* (1976), 423 U.S. 411, 428–429, 96 S.Ct. 820, 46 L.Ed.2d 598 (Powell, J., concurring).

{¶ 10} "The historic purpose of the arrest warrant in the criminal context was to interpose between the government and the citizen a neutral official charged with protecting basic rights." *Hyser v. Reed* (D.C.Cir.1963), 318 F.2d 225, 243; the requirement is designed "to interpose the magistrate's determination of probable cause between the zealous officer and the citizen." *Payton v. New York* (1980), 445 U.S. 573, 585, 100 S.Ct. 1371, 63 L.Ed.2d 639.

{¶ 11} The Fourth Amendment prohibits warrantless searches and seizures, rendering them per se unreasonable unless an exception applies. Id.; *Katz v. United States* (1967), 389 U.S. 347, 357, 88 S.Ct. 507, 19 L.Ed.2d 576; *State v. Cosby,* 177 Ohio App.3d 670, 2008-Ohio-3862, 895 N.E.2d 868, at ¶ 16. Exigent circumstances are a well-established exception to the warrant requirement of the Fourth Amendment regulating searches and seizures. *State v. Andrews,* 177 Ohio App.3d 593, 2008-Ohio-3993, 895 N.E.2d 585, at ¶ 23; *State v. Berry,* 167 Ohio App.3d 206, 2006-Ohio-3035, 854 N.E.2d 558, at ¶ 12. The scope of this exception is strictly circumscribed by the exigencies that justify the search or seizure, and the police "bear a heavy burden when attempting to demonstrate

an urgent need that might justify warrantless searches or arrests." *Welsh v. Wisconsin* (1984), 466 U.S. 740, 750, 104 S.Ct. 2091, 80 L.Ed.2d 732. Moreover, Ohio's Constitution, Section 14, Article I, provides: "The right of the people to be secure in their persons * * * against unreasonable searches and seizures shall not be violated; and no warrant shall issue, but upon probable cause, supported by oath or affirmation, particularly describing * * * the person * * * to be seized." And it is well established that Ohio is free to impose and adhere to more stringent constitutional requirements in interpreting its own constitutional guarantees. *State v. Jordan,* 104 Ohio St.3d 21, 2004-Ohio-6085, 817 N.E.2d 864, at ¶ 55; *State v. Guy* (Sept. 23, 1983), Lucas App. No. L–83–140, 1983 WL 6952, *5, at fn. 3.

{¶ 12} A warrantless arrest is permitted when two requirements have been met: first, the officer must have probable cause for the arrest; second, obtaining an arrest warrant beforehand must be shown to have been impracticable under the circumstances. *State v. Heston* (1972), 29 Ohio St.2d 152, 58 O.O.2d 349, 280 N.E.2d 376, paragraph two of the syllabus; *State v. Woodards* (1966), 6 Ohio St.2d 14, 35 O.O.2d 8, 215 N.E.2d 568. See also *State v. Smith* (April 26, 1979), Montgomery App. No. 6139, 1979 WL 208438.

{¶ 13} Jones's argument in his motion to suppress and in his brief on appeal addresses only whether the police officers had probable cause to stop and arrest him. The trial court's decision overruling the motion to suppress was also confined to the probable-cause determination. However, we must address both requirements for a warrantless arrest.

{¶ 14} An appellate court reviews a trial court's decision on a motion to suppress de novo. *State v. Bing* (1999), 134 Ohio App.3d 444, 448, 731 N.E.2d 266, citing *Ornelas v. United States* (1996), 517 U.S. 690, 699, 116 S.Ct. 1657, 134 L.Ed.2d 911. An appellate court reviews the facts only for clear error, giving due weight to the trial court as to inferences drawn from those facts. Id.

{¶ 15} We begin with the issue of probable cause. The state bears the burden of proof on the issue of whether probable cause existed for a warrantless search and seizure. *Xenia v. Wallace* (1988), 37 Ohio St.3d 216, 218, 524 N.E.2d 889. "Probable cause to arrest depends 'upon whether, at the moment the arrest was made * * * the facts and circumstances within [the arresting officers'] knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the [suspect] had committed or was committing an offense.'" *Adams v. Williams* (1972), 407 U.S. 143, 148, 92 S.Ct. 1921, 32 L.Ed.2d 612, citing *Beck v. Ohio* (1964), 379 U.S. 89, 91, 85 S.Ct. 223, 13 L.Ed.2d 142; *State v. Brown,* 115 Ohio St.3d 55, 2007-Ohio-4837, 873 N.E.2d 858, at ¶ 66, citing *Watson,* 423 U.S. 411, 96 S.Ct. 820, 46 L.Ed.2d 598.

See also *State v. Jordan* (Oct. 19, 2001), Montgomery App. No. 18600, 2001 WL 1245083. The existence of probable cause is determined by looking at the totality of the circumstances. See *Illinois v. Gates* (1983), 462 U.S. 213, 230–232, 103 S.Ct. 2317, 76 L.Ed.2d 527.

{¶ 16} At the suppression hearing, two Troy police officers testified about the basis for the officers' decision to stop and arrest Jones. Detective Christopher Tilley testified that officers had been working on a case involving the use of a confidential informant to purchase drugs from Jones. Tilley stated that Detective Short had been using a confidential informant to purchase drugs from Jones "for quite some time," that officers had arranged to buy drugs from Jones at least three times through the informant, and that he (Tilley) had been personally involved with at least two prior controlled drug buys involving Jones and the confidential informant. As a result, there were "three felony five trafficking charges on file" against Jones at the police department, but they had not been filed in court. Tilley acknowledged that there had been no search warrant or arrest warrant from any court, only the "charges" written up at the police department. It is unclear from the record what controlled substance Jones had allegedly sold to the informant on previous occasions, or in what amount, except that the officers classified the offenses as "F5s," or felonies of the fifth degree. Further, there is nothing in the record as to when these purchases allegedly occurred.

{¶ 17} Three weeks before Jones's arrest, Troy police officers did a "drug roundup," which meant that they made a concerted effort to "round up the individuals" implicated in some of the cases on which they had been working. Jones was included in this group. Tilley described the intent of the "roundup" as follows: "We arrest them, we bring them in, we talk to 'em, and at that point they either go to jail or we work out some other sort of arrangement."

{¶ 18} At a minimum, the officers had been looking for Jones from the date of the roundup until the date of his arrest, although Tilley testified that the investigation, including the drug purchases, had been going on for "quite some time." Despite the fact that, as a result of the drug roundup, the confidential informant was told that the police were looking for Jones, no complaint was filed and no warrant was obtained for Jones. On February 15, 2008, the confidential informant called Tilley at the police department to report that Jones would be coming to Troy that evening, "holding drugs." The informant stated that Jones would be in an older maroon two-door Oldsmobile driven by Matt Furrow. According to Tilley, the confidential informant had a successful record; the informant had provided information leading to several arrests, and the information provided by the informant had "always turned out to be exactly" as reported.

{¶ 19} After the phone call from the informant, Tilley confirmed via computer that Furrow owned a mid–1980s Oldsmobile and obtained the license-plate number. Tilley immediately arranged for officers to watch the Troy exits from Interstate 75 for a maroon Oldsmobile with the specified license plate, containing a black man and a white man. Jones was black, and Furrow was white. Furrow and Jones were stopped a short time later after exiting the interstate in a car matching the informant's description.

{¶ 20} Police Officer Joe Stutz stopped the car in which Jones was riding. Stutz testified that he stopped the car because it matched the description with which he had been provided, including the presence of a black man and a white man in the car. Once the car had stopped, Stutz recognized the passenger as Jones and arrested him immediately. Stutz searched Jones incident to the arrest and found baggies of crack cocaine and marijuana in Jones's pocket.

{¶ 21} In this case, the facts providing probable cause for Jones's stop, seizure, and arrest had allegedly been observed, at least indirectly, by the police officers themselves. Detective Tilley stated that he had been present at two prior controlled drug buys from Jones, but that the police had been unable to locate him in recent weeks. On the date of Jones's arrest, the informant provided the information about Jones's whereabouts. The police verified this information to the extent that they were able to do so, namely, by ascertaining that the man with whom Jones was alleged to be driving owned the type of car in which they were alleged to be traveling.

{¶ 22} Under the totality of the circumstances, the trial court reasonably concluded that the police officers had had probable cause for stopping the Oldsmobile based on the informant's description of the vehicle, the informant's reliability, Detective Tilley's verification that the man with whom Jones was traveling owned the type of car described by the informant, and an officer's observation that the races of the Oldsmobile's occupants were consistent with the information known to the officers and verified through vehicle registration and driver's license records. The judge's decision found that "the officers had sufficient cause to stop the car and probable cause to arrest the defendant for the prior drug trafficking offenses." We find no error in the trial court's determination that the officers had probable cause to stop and arrest Jones for those prior alleged offenses.

{¶ 23} Jones's argument does not specify how, under the facts of this case, the officers lacked probable cause to arrest him. He simply cites two other cases involving informants where appellate courts held that probable cause was lacking. In *State v. Young,* Erie App. No. E–04–013, 2005-Ohio-3369, 2005 WL 1532727, a tip alerted police to the potential for criminal activity, but the police only observed the defendant place an unknown object in his truck and drive in the

general direction specified; there was no actual evidence of any criminal activity by the defendant. The Sixth District held that without something more to indicate criminal activity, the defendant's actions were insufficient to establish probable cause to justify a stop and arrest. In *State v. Cabell*, Lucas App. No. L–06–1026, 2006-Ohio-4914, 2006 WL 2709275, the Sixth District also held that the police had acted prematurely by arresting a defendant before observing activity to corroborate a confidential informant's claim that he would be delivering drugs at a particular time and place. We find *Young* and *Cabell* to be distinguishable from Jones's situation, because the detectives who sought to arrest Jones had personally observed his prior criminal activity and thus had probable cause for his arrest.

 {¶ 24} We now turn to the question that the trial court and Jones did not address: whether the state showed that it was impracticable under the circumstances for the police officers to obtain an arrest warrant before Jones's arrest. Because Jones did not raise this issue in the trial court, he has waived all but plain error. Plain error has been defined as "obvious error prejudicial to a defendant * * * which involves a matter of great public interest having substantial adverse impact on the integrity of and the public's confidence in judicial proceedings." *State v. Goldick*, Montgomery App. No. 22611, 2009-Ohio-2177, 2009 WL 1264276, at ¶ 44, citing *State v. Endicott* (1994), 99 Ohio App.3d 688, 694, 651 N.E.2d 1024.

 {¶ 25} As we discussed above, a warrantless arrest is the exception, not the rule. *State v. Smith*, Montgomery App. No. 6139, 1979 WL 208438, citing *Heston*, 29 Ohio St.2d 152, 58 O.O.2d 349, 280 N.E.2d 376, at paragraph two of the syllabus. In the absence of exigent circumstances, judicially untested determinations by police officers are simply not reliable enough to justify an arrest without a warrant—at least where the officers had sufficient opportunity to seek one beforehand. *Guy*, 1983 WL 6952. An officer's reasonable belief that a felony drug offense has been committed and that the person he seeks to arrest is guilty of the offense does not justify a warrantless arrest in all such cases; circumstances must be such as to make it impracticable to obtain a warrant. *Smith*, citing *Heston*, 29 Ohio St.2d 152, 58 O.O.2d 349, 280 N.E.2d 376, at paragraph two of syllabus. Arrest without a warrant, when a warrant can timely, safely, and readily be obtained, and based upon an alleged prior offense of unknown facts and timing, denies the arrestee the constitutional right to have a neutral magistrate determine whether there is probable cause to seize the person; rather, it permits a person's seizure, albeit on grounds slightly better than a "general warrant," at the temporally unchecked discretion of a law-enforcement officer, based on unverified and unreviewed suspicions.

{¶ 26} At the suppression hearing, undisputed evidence established that the police were aware of alleged criminal activity by Jones, namely, the sale of drugs, that had happened at least several weeks earlier. Detective Tilley testified that the police had been looking for Jones during this intervening period, but had been unable to find him, that their efforts intensified when they initiated a drug roundup, and that they had told some informants that they were looking for Jones. Officer Stutz testified that he had not observed any traffic violation before stopping the car and had arrested Jones solely based upon his belief, through the detectives, that the police had "charges" on Jones for prior drug offenses. The court did not find, nor did the parties argue, that the defendant was being stopped or arrested for anything other than "the three warrants that, or from the three charges that the Detective section had." When he was stopped, Jones was immediately handcuffed. Officer Stutz conducted a search incident to the arrest after Jones was handcuffed and found marijuana and crack cocaine. There is no evidence in the record that Jones was charged with any offenses related to the "charges" for which he was initially stopped.

{¶ 27} Based on the evidence presented, the police officers clearly had ample opportunity and time to obtain an arrest warrant, but failed to do so. There were no circumstances that made it impracticable to obtain an arrest warrant between the time of the controlled drug buys with police officers and the time Jones was spotted on the interstate at least several weeks later. Indeed, the passage of several weeks made it virtually impossible to establish the impracticability of obtaining a warrant. See *State v. English* (Nov. 12, 1974), Warren App. No. 2, 1974 WL 184279 (holding that lapse of several hours between the questioning of the suspects and their arrest gave police ample opportunity to obtain arrest warrants). The existence of probable cause did not excuse the unexplained failure of police officers to procure an arrest warrant when there was ample opportunity to do so. See *Guy*, Lucas App. No. L–83–140, 1983 WL 6952. In our view, to hold that an arrest warrant was not required under these circumstances would render the Fourth Amendment's prohibition of warrantless searches and seizures meaningless.

{¶ 28} Jones's first assignment of error is sustained.

### III

{¶ 29} Jones's second assignment of error states:

{¶ 30} "The trial court erred when it failed to allow the defendant replacement legal counsel."

{¶ 31} In his second assignment, Jones argues that the trial court erred in refusing to allow him to change appointed counsel because of Jones's "severe

problems" communicating with his attorney. Because our disposition of the first assignment of error renders this assignment moot, we need not address it. See App.R. 12(A)(1)(c). We note, however, that a "defendant's Sixth Amendment right to competent counsel does not extend to a right to counsel of defendant's choice," *State v. McCoy*, Greene App. No. 2003–CA–27, 2004-Ohio-266, 2004 WL 103004, ¶ 7, citing *Thurston v. Maxwell* (1965), 3 Ohio St.2d 92, 93, 32 O.O.2d 63, 209 N.E.2d 204, nor does it guarantee a "meaningful relationship" between an accused and his counsel. *Morris v. Slappy*, 461 U.S. 1, 14, 103 S.Ct. 1610, 75 L.Ed.2d 610. Moreover, the record does not demonstrate that serious, legitimate problems existed between Jones and his attorney.

## IV

{¶ 32} The judgment of the trial court will be reversed, and the matter will be remanded for further proceedings.

Judgment reversed
and cause remanded.

DONOVAN, P.J., and GRADY, J., concur.