[Cite as *State v. Cooper*, 2011-Ohio-5017.]

IN THE COURT OF APPEALS OF MONTGOMERY COUNTY, OHIO

STATE OF OHIO                    :

    Plaintiff-Appellee          :    C.A. CASE NO. 24321

vs.                              :    T.C. CASE NO. 09CR4069/1

JAYTRON COOPER                   :    (Criminal Appeal from
                                       Common Pleas Court)
    Defendant-Appellant         :

. . . . . . . . .

O P I N I O N

Rendered on the 30th day of September, 2011.

. . . . . . . . .

Mathias H. Heck, Jr., Pros. Attorney; Timothy J. Cole, Asst. Pros. Attorney, Atty. Reg. No. 0084117, P.O. Box 972, Dayton, OH 45422
    Attorneys for Plaintiff-Appellee

Andrea G. Ostrowski, Atty. Reg. No. 0075318, 25 East Central Avenue, Suite 4, Springboro, OH 45066
    Attorney for Defendant-Appellant

. . . . . . . . .

GRADY, P.J.:

{¶ 1} Defendant, Jaytron Cooper, appeals from his conviction and sentence for possession of crack cocaine and trafficking in marijuana.

{¶ 2} On December 2, 2009, at 6:53 p.m., an unidentified male

called 911 and reported that he had heard six gunshots and saw three African-American males run into the apartment at 5150 Northcutt Place in Harrison Township. Montgomery County sheriff's deputies were dispatched to the scene. Deputy Hutson went to the back door while another deputy watched the front door. Deputy Hutson could hear a television or radio playing inside the apartment and, after Hutson knocked on the door several times, without any response, the volume was turned up.

{¶ 3} At 7:11 p.m., a person identifying himself as Shawn Parker called 911. Parker reported that his son had sent him a text message saying that he was being robbed and held against his will in the apartment at 5150 Northcutt Place. The police dispatcher advised deputies on the scene that the caller's son said he could see the responding officers outside, and that he was being held inside a closet upstairs.

{¶ 4} While standing by the back door, Deputy Hutson saw a male briefly stick his head out of second story bathroom window and then quickly close that window. Deputy Hutson knocked louder on the back door to overcome the sound of the radio or television. Moments later, Defendant opened the door. When Defendant saw the officers, he immediately slammed the door shut. Believing that emergency circumstances existed justifying a warrantless entry into the residence, officers entered the apartment.

{¶ 5} Inside the residence police found six men in the living room, another man coming down the stairs, and another man upstairs. Officers immediately began searching for the victim of the reported robbery/abduction, but no victim was found. While in the kitchen area, police noticed a very strong odor of marijuana and observed, in plain view, a plastic cup half full of marijuana lying in an open trash can. A second search for the victim was conducted by police because none of the people present admitted to being the victim of a robbery/abduction. During that second search police looked inside closets and under the bed. In a first floor closet, police discovered a bulletproof vest. In an upstairs bedroom, when police lifted the mattress to look under the bed, they discovered several firearms. Police recognized many of the individuals in the apartment as persons who had previously been trespassed off the property, and they were arrested.

{¶ 6} After police removed all of the individuals from that apartment, they obtained a search warrant for the premises. During execution of that search warrant, in the upstairs bedroom police recovered from under the mattress the multiple firearms they had previously seen while searching for the victim. Also in that bedroom, police discovered an electric utility bill for the residence in Defendant's name, and a cigar box inside a tub full of men's clothing. Inside that cigar box police found a small

plastic baggie containing crack cocaine, and a large plastic baggie filled with twelve smaller baggies that each contained a small amount of marijuana. The small baggies of marijuana were packaged for sale. A search of the remainder of that apartment produced baggies with pills in them, digital scales, and other drugs and guns. After the search, Defendant told Detective Reed that he lived at that apartment and had been home sleeping since 9:00 a.m.

{¶ 7} Defendant was indicted on one count of possession of crack cocaine, less than one gram, in violation of R.C. 2925.11(A), and one count of trafficking in marijuana in violation of R.C. 2925.03(A)(2). Three one-year firearm specifications, R.C. 2941.141, were attached to each count. Defendant filed a motion to suppress the evidence, which the trial court overruled following a hearing. At trial, Defendant's theory was that the drugs and guns found in his apartment were not his and must have been put there by someone else who was present.

{¶ 8} Defendant was found guilty of both charges and two of the three firearm specifications attached to each count. The trial court sentenced Defendant to concurrent one year prison terms for possession of crack cocaine and trafficking in marijuana, and merged all of the firearm specifications and imposed one additional and consecutive one year term on those, for a total sentence of two years.

{¶ 9} Defendant timely appealed to this court from his conviction and sentence.

**FIRST ASSIGNMENT OF ERROR**

{¶ 10} "THE TRIAL COURT ERRED WHEN IT OVERRULED APPELLANT'S MOTION TO SUPPRESS."

{¶ 11} Defendant argues that the trial court erred in denying his motion to suppress the evidence because his Fourth Amendment rights were violated when police unlawfully entered his home without a warrant and conducted a warrantless search of the premises. If the initial entry by police into Defendant's home was unlawful, that tainted the warrant which authorized the subsequent search which produced the cocaine and marijuana that form the basis for the charges in this case, and that evidence must be suppressed. The trial court concluded that police entry into Defendant's home was lawful because it fell within a well-recognized exception to the warrant requirement, the exigent circumstances or emergency exception, and overruled the motion to suppress on that basis.

{¶ 12} In *State v. Overholser* (July 25, 1997), Clark App. No. 96CA0073, this court stated:

{¶ 13} "The Fourth Amendment to the United States Constitution protects people from 'unreasonable' searches and seizures. Warrantless searches and seizures are per se unreasonable under

the Fourth Amendment, subject to only a few well recognized exceptions. *Katz v. United States* (1967), 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576. One such recognized exception is the exigent circumstances or 'emergency' exception. Pursuant to that rule, a police officer, even absent a warrant or probable cause, may lawfully enter a structure, including a private home, when the totality of the facts and circumstances known to the officer gives rise to a reasonable belief that immediate entry is necessary to either protect that property or assist people inside who may be in danger or in need of immediate aid. Ringel, Searches, Seizures, Arrests and Confessions, Section 10.5(a); Katz, Ohio Arrest, Search and Seizure, Section 10.01-10.03.

{¶ 14} "A myriad of factual circumstances may give rise to an emergency situation and the corresponding need for an immediate warrantless entry. *See Wayne v. United States* (D.C.Cir., 1963), 318 F.2d 205, 212; Ringel, Searches, Seizures, Arrests and Confessions, Section 10.5(a), fn 41 and 42. When police reasonably believe that a burglary is in progress or has occurred at a particular structure, an immediate warrantless entry undertaken to investigate and protect that property and assist any victims inside who may be in danger or in need of immediate aid has been upheld by the courts as a reasonable search. See Lafave, Search and Seizure, Section 6.6(a) and (b).

{¶ 15} "The concept of emergency circumstances justifying an immediate warrantless entry by police has long been recognized in Ohio. *State v. Hyde* (1971), 26 Ohio App.2d 32, 268 N.E.2d 820; *State v. Roach* (1982), 8 Ohio App.3d 42, 455 N.E.2d 1328; *State v. Morris* (November 29, 1989), Montgomery App. No. 10992, unreported. However, the warrantless entry and search must be limited in duration and scope to the purpose justifying that intrusion, including only that which is necessary to alleviate the emergency and the dangers associated therewith. *Mincey v. Arizona* (1978), 437 U.S. 385, 98 S.Ct. 2408, 57 L.Ed.2d 290. During a warrantless emergency entry police may seize contraband which is in plain view. *Michigan v. Tyler* (1978), 436 U.S. 499, 98 S.Ct. 1942, 56 L.Ed.2d 486; *Thompson v. Louisiana* (1984), 469 U.S. 17, 105 S.Ct. 409, 83 L.Ed.2d 246."

{¶ 16} Defendant challenges the initial warrantless entry into his home by police. Thus, the question becomes whether at the time police entered Defendant's home they had a reasonable belief, based upon the totality of the facts and circumstances, that there might be a person inside that residence who was in danger or in need of immediate aid. *Overholser*. Based upon the particular facts of this case, we answer that question in the affirmative and conclude, as did the trial court, that police entry into Defendant's home was reasonable and constitutionally permissible.

{¶ **17**} Police were dispatched to Defendant's home as a result of a 911 call wherein an anonymous caller reported that he heard six gunshots and saw three African-American males run into the apartment at 5150 Northcutt Place.  Police repeatedly knocked on the door for some 20-25 minutes but no one answered the door. Police were aware there were people inside that apartment because in response to the police knocking, a radio or television inside the apartment was turned up louder.

{¶ **18**} Shortly after officers arrived on the scene, a second 911 call came in.  This second call was made by a person who identified himself as Shawn Parker.  Calls from identified citizen informants are recognized as possessing greater reliability than tips received from anonymous callers or known criminal informants, and therefore a strong showing as to other indicia of reliability may be unnecessary.  *City of Maumee v. Weisner*, 87 Ohio St.3d 295, 1999-Ohio-68.  Parker reported that his son had sent him a text message saying he was being held against his will upstairs in the apartment at 5150 Northcutt Place, and the occupants had attempted to rob him.  The police dispatcher advised deputies at the scene that according to Parker, his son could see the responding officers outside, and that his son was being held in a closet upstairs.

{¶ **19**} While standing by the back door, Deputy Hutson looked up and observed a man stick his head out of a second story bathroom

window and then quickly close that window. Deputy Hutson began knocking on the door more loudly. In response, Defendant finally opened the door. When Defendant observed the officers, he immediately slammed the door shut.

{¶ 20} Under these facts and circumstances, it was reasonable for police to believe that the reported robbery victim who was being held hostage, as well as the perpetrators of the robbery, were still inside the home, and that the victim might be in danger or in need of immediate aid. *Overholser*. Accordingly, police were privileged to enter the home without a warrant for the sole purpose of looking for the victim and rendering any assistance the victim might need. Furthermore, the brief 20-25 minute delay here between the 911 calls and police entry into Defendant's home does not negate the exigency that existed. *State v. Berry*, 167 Ohio App.3d 206, 2006-Ohio-3035.

{¶ 21} Defendant argues that even if police were justified in initially entering Defendant's home to search for the reported robbery victim that was being held hostage, the second search of the home police conducted exceeded the duration and scope of the purpose justifying the initial intrusion, to alleviate the emergency and the dangers associated therewith. *Overholser*.

{¶ 22} The evidence demonstrates that upon entering Defendant's home, police immediately conducted an initial search for the

victim. During that initial search, police rounded up all of the people that they found inside the home. When asked by police, none of the people present came forward and admitted to being the robbery/abduction victim. Based upon information contained in the second 911 call, Sergeant Adkins believed, and reasonably so, that there could still be another person inside the home, a robbery victim who was being held hostage in a less visible location such as a closet or under a bed, who might be injured or in need of immediate aid. *Berry*. Accordingly, Sergeant Adkins ordered a second search of the home for the victim. This time police looked inside closets, and under the bed, but properly limited the scope of their search to places where a person or body can hide or be hidden. It was during this second search that police discovered several firearms when they lifted a mattress to look under the bed, and marijuana in plain view in the kitchen.

{¶ 23} As we noted in *Overholser*,

{¶ 24} "Every Fourth amendment question turns on the issue of reasonableness, and every determination of reasonableness is *sui generis*. When in an investigation of crime a search and seizure is impelled by reasons of genuine physical danger to any person, it presents concerns and needs that are not easily served by a slow, deliberative process. Actions are to be judged on a common sense standard, . . ."

{¶ 25} Here, applying a common sense review to all of the facts and circumstances known to police on the scene, we conclude that their entry into Defendant's home was reasonable and lawful. The contraband police observed in plain view during their warrantless emergency entry could be seized. *Overholser*. Their observations could likewise be the basis for a warrant permitting seizure of the contraband, which is what occurred. Defendant's Fourth Amendment rights were not violated, and the trial court properly overruled his motion to suppress the evidence.

{¶ 26} Defendant's first assignment of error is overruled.

<u>SECOND ASSIGNMENT OF ERROR</u>

{¶ 27} "THE TRIAL COURT COMMITTED REVERSIBLE ERROR WHEN IT ADMITTED HIGHLY PREJUDICIAL EVIDENCE THAT WAS NOT PROBATIVE."

{¶ 28} Defendant argues that the trial court abused its discretion by admitting into evidence, over his objection, various items found in Defendant's apartment during execution of the search warrant, including baggies and bottles of pills, a bulletproof vest, a video surveillance camera, and loose ammunition. Defendant claims that these items were never connected to him and are not relevant to the specific charges against him. Defendant argues that whatever minimal probative value these items may have had was far outweighed by the danger of unfair prejudice, and thus this evidence should therefore have been excluded. Evid.R.

403(A). Defendant further argues that the prosecutor used these items found in Defendant's apartment as a basis to suggest that Defendant engages in a lot of criminal activity, including drug dealing, and that he was acting in conformity with that bad character on this particular occasion, in violation of Evid.R. 404(B).

{¶ 29} With respect to the admission or exclusion of evidence, the trial court has broad discretion and its decision in such matters will not be disturbed by a reviewing court absent an abuse of discretion that has caused material prejudice. *State v. Noling*, 98 Ohio St.3d 44, 781 N.E.2d 88, 2002-Ohio-7044.

{¶ 30} "'Abuse of discretion' has been defined as an attitude that is unreasonable, arbitrary or unconscionable. *Huffman v. Hair Surgeon, Inc.* (1985), 19 Ohio St.3d 83, 87, 19 OBR 123, 126, 482 N.E.2d 1248, 1252. It is to be expected that most instances of abuse of discretion will result in decisions that are simply unreasonable, rather than decisions that are unconscionable or arbitrary.

{¶ 31} "A decision is unreasonable if there is no sound reasoning process that would support that decision. It is not enough that the reviewing court, were it deciding the issue *de novo*, would not have found that reasoning process to be persuasive, perhaps in view of countervailing reasoning processes that would

support a contrary result." *AAAA Enterprises, Inc. v. River Place Community Redevelopment* (1990), 50 Ohio St.3d 157, 161.

{¶ 32} Evid.R. 401 defines relevant evidence:

{¶ 33} "'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Evidence which is not relevant is not admissible. Evid.R. 402. Furthermore, Evid.R. 403(A) provides:

{¶ 34} "Exclusion mandatory. Although relevant, evidence is not admissible if its probative value is substantially outweighed by the danger of unfair prejudice, of confusion of the issues, or of misleading the jury."

{¶ 35} Evid.R. 404(B) states:

{¶ 36} "Other crimes, wrongs or acts. Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."

{¶ 37} In *State v. Williams*, Montgomery App. No. 20271, 2005-Ohio-1597, the defendant was charged with possession of both heroin and cocaine. At trial, the State admitted over the

defendant's objection various other items found in defendant's apartment during a drug raid, including numerous drugs, scales, and two loaded firearms, as well as cash found on defendant's person. Defendant argued that the trial court erred in admitting these items because they were never connected to him and do not form any part of the charges against him, and that whatever minimal probative value the items may possess is far outweighed by the danger of unfair prejudice. In concluding that the trial court properly admitted these items because they were relevant and admissible to prove that Defendant knew the purse he possessed and attempted to conceal contained controlled substances, we stated:

{¶ 38} "{¶ 60} Where, as in this case, the collateral matters in Evid.R. 404(B) such as knowledge and plan are at issue in the case, evidence probative of them is admissible per Evid.R. 404(B) to prove the offense charged, notwithstanding that the same evidence might also prove another, uncharged offense. Of course, the trial court must exclude the evidence if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues or misleading the jury. Evid.R. 403(A).

{¶ 39} "{¶ 61} The State was obligated to prove that Defendant knew or was probably aware that the purse he had in his possession and threw out of the window during this drug raid contained

controlled substances. It is common knowledge that in locations where drug activity is prevalent, drugs, scales, weapons and large sums of money are often present. The Ohio Supreme Court has recognized that a connection exists between drugs and guns to such an extent that if drugs are present, it is reasonable to assume that weapons may also be present and the suspect(s) may be armed. *State v. Evans,* 67 Ohio St.3d 405, 618 N.E.2d 162, 1993-Ohio-186."

{¶ 40} The same is true in this case. Defendant was charged with violations of R.C. 2925.11(A) and 2925.03(A)(2), which required the State to prove that Defendant knowingly possessed crack cocaine, and knowingly prepared marijuana for distribution, when he knew the marijuana was intended for sale. The various pills, guns, ammunition, bulletproof vest and video surveillance camera found inside Defendant's apartment during this drug raid were relevant and admissible to prove Defendant's knowledge, plan, purpose/intent with respect to possessing controlled substances and reselling them. *Williams.* Furthermore, the probative value of this evidence is not substantially outweighed by the dangers of unfair prejudice. *Id.* No abuse of discretion is demonstrated with respect to the trial court's admission of this evidence.

{¶ 41} Defendant's second assignment of error is overruled.

## THIRD ASSIGNMENT OF ERROR

{¶ 42} "THE TRIAL COURT ERRED WHEN IT LIMITED

CROSS-EXAMINATION."

{¶ 43} Defendant argues that the trial court abused its discretion in not allowing defense counsel to cross-examine the police officers concerning their knowledge of the criminal histories and reputation of the various individuals who were present inside Defendant's apartment when police entered. Defendant wanted to introduce that evidence to support his theory that it was one or more of the other people who were present, and not Defendant, who hid the drugs and guns inside Defendant's apartment.

{¶ 44} The trial court allowed Defendant to elicit the names of the other people present, and allowed Deputy Zollers to testify that he recognized some of the individuals in Defendant's apartment and knew them from the community, and he classified them as "bad guys." The court also permitted Defendant to advance his argument that some of the other people present may have placed the guns and drugs in Defendant's apartment. The court, however, excluded any testimony by the officers concerning their knowledge of the various individual's criminal histories or reputation because that information was "irrelevant and immaterial" to the issues in the case.

{¶ 45} In *State v. Foust*, Montgomery App. No. 20470, 2005-Ohio-440, at ¶13-14, we stated:

{¶ 46} "The constitutional right of cross-examination includes the right to impeach a witness's credibility. *State v. Green,* 66 Ohio St.3d 141, 1993-Ohio-26; *State v. Brewer* (August 24, 1994), Montgomery App. No. 13866; Evid.R. 611(B). Unlike Federal Crim.R. 611, which generally limits cross-examination to matters raised during direct, Ohio Crim.R. 611(B) permits cross-examination on all relevant issues and matters relating to credibility. Weissenberger, Ohio Evidence 2005 Courtroom Manual, at p. 245-246. Possible bias, prejudice, pecuniary interest in the litigation or motive to misrepresent facts, are matters that may affect credibility. Evid.R. 616(A); *State v. Ferguson* (1983), 5 Ohio St.3d 160, 450 N.E.2d 265. The denial of full and effective cross-examination of any witness who identifies Defendant and the perpetrator of the offense, is the denial of the fundamental constitutional right of confrontation essential to a fair trial. *State v. Hannah* (1978), 54 Ohio St.2d 84, 374 N.E.2d 1359; Brewer, supra.

{¶ 47} "On the other hand, trial courts have wide latitude in imposing reasonable limits on the scope of cross-examination based upon concerns about harassment, prejudice, confusion of the issues, the witness's safety, or repetitive, marginally relevant interrogation. *Delaware v. Van Arsdall* (1986), 475 U.S. 673, 106 S.Ct. 1431, 89 L.Ed.2d 674. It is within the trial court's broad

discretion to determine whether testimony is relevant, and to balance its potential probative value against the danger of unfair prejudice. *In re Fugate* (2000), Darke App. No. 1512. We will not interfere with the trial court's decision in those matters absent an abuse of discretion. *Id.* An abuse of discretion means more than a mere error of law or an error in judgment. It implies an arbitrary, unreasonable, unconscionable attitude on the part of the trial court. *Id.*"

{¶ 48} We agree with the trial court that the issues about which Defendant wished to cross-examine the police officers, their knowledge concerning the criminal histories and reputation of the other people present inside Defendant's apartment, had little if any relevance to whether Defendant knowingly possessed cocaine and knowingly prepared for distribution marijuana, knowing it was intended for sale. Such collateral matters would have injected into this case confusion of the issues by placing these other individuals who were present on trial, when they were not defendants or even witnesses in this case. The information being sought by Defendant was not for the purpose of impeaching the credibility of the police officers or anyone else who testified.

{¶ 49} Whatever marginal probative value these extraneous areas of inquiry might have had in supporting Defendant's theory that other people present in his apartment were responsible for putting

the drugs and guns there, was far outweighed by the danger of unfair prejudice that could result from inquiry into those areas. Evid.R. 403(A). Under those circumstances, the limits the trial court placed on the scope of cross-examination of the police officers was entirely reasonable and not an abuse of discretion.

{¶ 50} Defendant's third assignment of error is overruled.

FOURTH ASSIGNMENT OF ERROR

{¶ 51} "THE TRIAL COURT ERRED WHEN IT OVERRULED APPELLANT'S MOTION FOR ACQUITTAL BECAUSE THERE WAS INSUFFICIENT EVIDENCE TO SUPPORT THE CHARGES AGAINST APPELLANT."

{¶ 52} Defendant argues that the trial court erred in overruling his Crim.R. 29 motion for acquittal based upon insufficient evidence because the State failed to prove that he knowingly possessed the cocaine and marijuana police found in the bedroom of his apartment.

{¶ 53} When considering a Crim.R. 29 motion for acquittal, the trial court must construe the evidence in a light most favorable to the State and determine whether reasonable minds could reach different conclusions on whether the evidence proves each element of the offense charged beyond a reasonable doubt. *State v. Bridgeman* (1978), 55 Ohio St.2d 261. The motion will be granted only when reasonable minds could only conclude that the evidence fails to prove all of the elements of the offense. *State v. Miles*

(1996), 114 Ohio App.3d 738.

{¶ 54} A Crim.R. 29 motion challenges the legal sufficiency of the evidence. A sufficiency of the evidence argument challenges whether the State has presented adequate evidence on each element of the offense to allow the case to go to the jury or sustain the verdict as a matter of law. *State v. Thompkins,* (1997), 78 Ohio St.3d 380. The proper test to apply to such an inquiry is the one set forth in paragraph two of the syllabus of *State v. Jenks* (1991), 61 Ohio St.3d 259:

{¶ 55} "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt."

{¶ 56} Defendant was charged in count one with violating R.C. 2925.11(A), which required the State to prove that Defendant knowingly possessed crack cocaine, and in count two with violating R.C. 2925.03(A)(2), which required the State to prove that Defendant knowingly prepared for distribution marijuana, knowing

or having reasonable cause to believe the marijuana was intended for sale or resale.

{¶ 57} "Knowingly" is defined in R.C. 2901.22(B):

{¶ 58} "A person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when he is aware that such circumstances probably exist."

{¶ 59} "Possession" is defined in R.C. 2925.01(K):

{¶ 60} "'Possess' or 'possession' means having control over a thing or substance, but may not be inferred solely from mere access to the thing or substance through ownership or occupation of the premises upon which the thing or substance is found."

{¶ 61} Possession of a drug may be either actual physical possession or constructive possession. *State v. Butler* (1989), 42 Ohio St.3d 174. A person has constructive possession of an item when he is conscious of the presence of the object and able to exercise dominion and control over that item, even if it is not within his immediate physical possession. *State v. Hankerson* (1982), 70 Ohio St.2d 87; *State v. Wolery* (1976), 46 Ohio St.2d 316.

{¶ 62} Readily usable drugs found in very close proximity to

a defendant may constitute circumstantial evidence sufficient to support a conclusion that he constructively possessed those drugs. *State v. Miller*, Montgomery App. No. 19174, 2002-Ohio-4197. In determining whether a defendant knowingly possessed a controlled substance, it is necessary to examine the totality of the facts and circumstances surrounding its discovery. *State v. Teamer*, 82 Ohio St.3d 490, 492, 1998-Ohio-193; *State v. Pounds*, Montgomery App. No. 21257, 2006-Ohio-3040.

{¶ 63} Defendant points out that his fingerprints were not found on the baggies of cocaine or marijuana, and that there were eight other people present inside his apartment when police arrived. According to Defendant, the only evidence of his possession was the mere fact that he was the lessor and lived at that apartment where the drugs were found, and he was present at the time the drugs were discovered by police. Defendant claims that is insufficient to prove knowing possession. R.C. 2925.01(K).

{¶ 64} The evidence presented by the State, which includes Defendant's statements to Detective Reed and the electric utility bill found on the desk in the bedroom of the apartment, demonstrates that Defendant was the resident of this apartment and was present when police entered and discovered the contraband in question. A blue tub full of men's clothing was found at the end of the bed. Inside that tub police found a cigar box which contained a small

baggie of crack cocaine, and a large baggie filled with twelve smaller baggies, each of which contained a similar sized small amount of marijuana. Deputy Moore and Detective Reed both testified that the marijuana was packaged for sale. Inside that same bedroom where the cocaine and marijuana were found, police discovered several loaded firearms between the mattress and box springs. In the kitchen area, police discovered baggies with pills in them, digital scales, and marijuana in plain view.

{¶ 65} From the combination of direct and circumstantial evidence in this case, viewed in a light most favorable to the State, a rational trier of facts could find beyond a reasonable doubt that Defendant constructively possessed the crack cocaine and marijuana police found in the bedroom of his apartment. Defendant's convictions are supported by legally sufficient evidence and the trial court properly overruled his Crim.R. 29 motion for acquittal.

{¶ 66} Defendant's fourth assignment of error is overruled.

**FIFTH ASSIGNMENT OF ERROR**

{¶ 67} "APPELLANT'S CONVICTIONS ARE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."

{¶ 68} A weight of the evidence argument challenges the believability of the evidence and asks which of the competing inferences suggested by the evidence is more believable or

persuasive. *State v. Hufnagle* (Sept. 6, 1996), Montgomery App. No. 15563, unreported. The proper test to apply to that inquiry is the one set forth in *State v. Martin* (1983), 20 Ohio App.3d 172, 175:

{¶ 69} "[t]he court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." Accord: *State v. Thompkins*, *supra*.

{¶ 70} The credibility of the witnesses and the weight to be given to their testimony are matters for the trier of facts to resolve. *State v. DeHass* (1967), 10 Ohio St.2d 230. In *State v. Lawson* (Aug. 22, 1997), Montgomery App.No. 16288, we observed:

{¶ 71} "[b]ecause the factfinder . . . has the opportunity to see and hear the witnesses, the cautious exercise of the discretionary power of a court of appeals to find that a judgment is against the manifest weight of the evidence requires that substantial deference be extended to the factfinder's determinations of credibility. The decision whether, and to what extent, to credit the testimony of particular witnesses is within the peculiar competence of the factfinder, who has seen and heard the witness."

{¶ 72} This court will not substitute its judgment for that of the trier of facts on the issue of witness credibility unless it is patently apparent that the trier of facts lost its way in arriving at its verdict. *State v. Bradley* (Oct. 24, 1997), Champaign App. No. 97-CA-03.

{¶ 73} Defendant argues that his conviction on the firearm specifications is against the manifest weight of the evidence because the State failed to prove that Defendant had possession, custody or control over those firearms. Defendant points out that no one saw him in actual possession of any firearm, and there was no evidence that Defendant's fingerprints were found on any of the firearms. According to Defendant, merely being the tenant of the apartment where the firearms were found is not sufficient to prove that Defendant possessed or had control over those firearms.

{¶ 74} For essentially the same reasons we discussed in overruling the previous assignment of error, the combination of direct and circumstantial evidence presented by the State, when viewed in its totality, was sufficient to prove that Defendant constructively possessed the firearms found in the bedroom of his apartment. Defendant admitted to police that he lived at the apartment and had been home sleeping from 9:00 a.m. until police arrived. The guns were found in the bed in Defendant's bedroom,

between the mattress and box springs. Defendant's close personal proximity and ready access to these loaded, operable firearms establishes his constructive possession/control over them. The jury did not lose its way in choosing to believe the State's version of events rather than Defendant's, which it had a right to do. *DeHass*.

{¶ 75} Reviewing the record as a whole, we cannot say that the evidence weighs heavily against a conviction, that the jury lost its way in choosing to believe the State's witnesses, or that a manifest miscarriage of justice occurred. Defendant's conviction on the firearm specifications is not against the manifest weight of the evidence.

{¶ 76} Defendant's fifth assignment of error is overruled. The judgment of the trial court will be affirmed.


DONOVAN, J. And WAITE, J., concur.

(Hon. Cheryl L. Waite, Seventh District Court of Appeals, sitting by assignment of the Chief Justice of the Supreme Court of Ohio.)


Copies mailed to:

Timothy J. Cole, Esq.
Andrea G. Ostrowski, Esq.
Hon. John D. Schmitt (Visiting Judge)
Hon. Mary Wiseman