[Cite as *State v. Adams*, 2019-Ohio-1140.]

# IN THE COURT OF APPEALS OF OHIO
## SECOND APPELLATE DISTRICT
## CLARK COUNTY

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Plaintiff-Appellee | : | Appellate Case No. 2018-CA-80 |
| | : | |
| v. | : | Trial Court Case No. 2017-CR-671 |
| | : | |
| KELLY LYNNE ADAMS | : | (Criminal Appeal from |
| | : | Common Pleas Court) |
| Defendant-Appellant | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 29th day of March, 2019.

. . . . . . . . . .

ANDREW P. PICKERING, Atty. Reg. No. 0068770, Clark County Prosecutor's Office, Appellate Division, 50 East Columbia Street, Suite 449, Springfield, Ohio 45502
     Attorney for Plaintiff-Appellee

FRANK MATTHEW BATZ, Atty. Reg. No. 0093817, 126 N. Philadelphia Street, Dayton, Ohio 45403
     Attorney for Defendant-Appellant

. . . . . . . . . . . .

FROELICH, J.

{¶ 1} Kelly Lynne Adams appeals her conviction for possession of cocaine, a fifth-degree felony. The judgment of the trial court will be affirmed.

### Factual and Procedural Background

{¶ 2} On September 9, 2017, a caller to 911 reported seeing an unresponsive person lying in the corner of a backyard in Springfield. When officers from the Springfield Police Division arrived at the location of the suspected drug overdose, medics already were on the scene tending to a female lying on the ground next to a tree stump. That woman was Adams, who at the time was under community control for a previous conviction of possessing cocaine. *See State v. Adams*, Clark C.P. No. 2016-CR-595.

{¶ 3} On top of the two-foot wide tree stump near Adams, then-Officer Cassidy Cantrell[1] observed a pink and white plaid purse and "a mirror with white powder on it." The purse contained various personal belongings, including several notebooks bearing Adams's name. Also on or near the stump were two orange caps from syringes and one empty syringe. After the medics revived Adams from what appeared to be an overdose of heroin or another opiate, she was "[v]ery angry" and uncooperative; Adams merely "grunt[ed]" in response to questions about the items found on the tree stump. Over Adams's objection, she was transported to Springfield Regional Medical Center. When police officers later attempted to interview her at the hospital, Adams asked "where her stuff was" but provided no information about the drugs found at the scene.

---

[1] Cantrell was a sergeant when she testified at Adams's trial, but received the promotion to that rank after the incident leading to Adams's arrest.

{¶ 4} Officer Justin Adkins arrived at the scene after Officer Cantrell. Officer Adkins took photographs and collected evidence, including placing the white powder from the mirror into a plastic bag. Testing by the Ohio Bureau of Criminal Investigation ("BCI") laboratory determined that the white substance contained less than 0.10 grams of cocaine. Adams thereafter was indicted for possession of cocaine in violation of R.C. 2925.11(A), a felony of the fifth degree.

{¶ 5} Following Adams's plea of not guilty, her case proceeded to a jury trial. Sgt. Cantrell testified about responding to the scene of Adams's apparent overdose and identified the photographs taken at that time. Based on her training and experience, Cantrell stated that the orange caps depicted in the photographs were from syringes that people "usually * * * use [to inject] heroin." She indicated that she had known drug users to use multiple types of drugs, including both heroin and cocaine.

{¶ 6} On cross-examination, Cantrell said that aside from Adams and emergency responders, the only other person she saw at the scene of Adams's overdose was the unnamed man who had called 911 after spotting Adams's unconscious body from the alley behind the property where she was found. Cantrell never entered the residence at that address. Cantrell said that she did not know who may have been living at the address where Adams was found, or where Adams resided. Cantrell was not aware of any fingerprint evidence collected at the scene, and the sergeant acknowledged she had no evidence that Adams had used cocaine on September 9, 2017. However, Cantrell said that in her training and experience, drugs typically are not left lying unattended, and often are found near the people using those drugs. She termed it "unlikely" that the powdery substance on the mirror would have been left outside by someone not present.

{¶ 7} Officer Adkins identified the evidence that he had collected from the scene. He testified that Adams was uncooperative when he and Cantrell attempted to question her at the hospital, and that persons revived from an overdose "more often" than not refuse to cooperate with law enforcement. Like Cantrell, he testified that drug addicts often use both heroin and cocaine, and often have drugs in close proximity when arrested. Officer Adkins stated that it is "not uncommon" for a person using a "downer" such as heroin to then use cocaine as a stimulant to counteract the heroin's effect.

{¶ 8} On cross-examination, Officer Adkins testified that crack cocaine "is usually smoked," but that no crack pipe was found on or near Adams or among her personal belongings at the scene. He also confirmed that two syringe caps, but only one syringe, were found at the scene, and that no fingerprints were taken or blood tests conducted.

{¶ 9} Megan Snyder of Ohio BCI testified as an expert witness regarding the identification of controlled substances. Snyder explained how she had determined "the off-white solid substance" recovered from the mirror at the scene of Adams's overdose to be cocaine. She testified that the substance appeared to be crack cocaine, which is "typically smoked," but can be "dissolve[d] * * * in an acidic liquid" such as lemon juice or vinegar, and then injected.

{¶ 10} The defense conducted no cross-examination of Snyder, and neither side presented any additional witnesses. The State's exhibits were admitted into evidence without objection.

{¶ 11} In closing, the State acknowledged that Adams apparently had overdosed on heroin, fentanyl, or some other opiate, but argued that Adams had kept cocaine nearby as a way to try "to bring herself back from the low heart rate" associated with an opiate

overdose. The prosecutor pointed to testimony that drug users often use both heroin and cocaine. The State also noted that Adams claimed the purse, even though she did not admit ownership of the illegal drugs found adjacent to that purse.

**{¶ 12}** Adams's attorney countered that the State had failed to demonstrate beyond a reasonable doubt that Adams exercised control over the cocaine found on the mirror. Asserting that Adams did not live at the "drug house" where she overdosed,[2] defense counsel argued that both the 911 call and the presence of two syringe caps but only one syringe indicated that someone else had been present where the cocaine was discovered. She further urged that the absence of a crack pipe and the State's failure to show that Adams had any means available to use the crack found at the scene weighed against a conclusion that the cocaine belonged to Adams. Additionally, defense counsel advanced the absence of fingerprint evidence or blood test results connecting Adams to the cocaine and urged that her mere "access" to that drug did not amount to possession.

**{¶ 13}** The jury found Adams guilty of possession of cocaine. Given Adams's history of other drug convictions as well as a prior overdose, the trial court continued Adams's previously-imposed community control for four years, imposed a 180-day jail sentence, and ordered her to complete a drug treatment program, serve 120 hours of community service, and pay costs and supervision fees.

**{¶ 14}** Adams appeals that judgment, setting forth three assignments of error:

1) [Adams]'s conviction was based on insufficient evidence as a matter of law.

---

[2] Despite this argument, no evidence was presented either that the location was a "drug house" or as to where Adams resided.

2) [Adams]'s conviction was against the manifest weight of the evidence.

3) [Adams] was provided with ineffective assi[s]tance of counsel.

### Assignments of Error #1, #2 –Sufficiency and Manifest Weight of Evidence

*a. Standard of Review*

{¶ 15} A sufficiency of the evidence argument disputes whether the State has presented adequate evidence on each element of the offense to sustain the verdict as a matter of law. *State v. Wilson*, 2d Dist. Montgomery No. 22581, 2009-Ohio-525, ¶ 10, citing *State v. Thompkins*, 78 Ohio St.3d 380, 386, 678 N.E.2d 541 (1997). "The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus.

{¶ 16} In contrast, "a weight of the evidence argument challenges the believability of the evidence and asks which of the competing inferences suggested by the evidence is more believable or persuasive." *Wilson* at ¶ 12; *see Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, 972 N.E.2d 517, ¶ 19 (" 'manifest weight of the evidence' refers to a greater amount of credible evidence and relates to persuasion"). When evaluating whether a conviction is against the manifest weight of the evidence, the appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider witness credibility, and determine whether, in resolving conflicts in the evidence, the trier of fact "clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *Thompkins* at 387, citing *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983).

{¶ 17} Because the trier of fact sees and hears the witnesses at trial, we must defer to the factfinder's decisions whether, and to what extent, to credit the testimony of particular witnesses. *State v. Lawson*, 2d Dist. Montgomery No. 16288, 1997 WL 476684 (Aug. 22, 1997). The fact that the evidence is subject to different interpretations does not render the conviction against the manifest weight of the evidence. *Wilson* at ¶ 14. A judgment of conviction should be reversed as being against the manifest weight of the evidence only in exceptional circumstances. *Martin* at 175.

*b. Elements of the Offense of Possession of Cocaine*

{¶ 18} Under R.C. 2925.11(A), "[n]o person shall knowingly obtain, possess, or use a controlled substance or a controlled substance analog." Even a trace amount of cocaine qualifies as a controlled substance. *See State v. Teamer*, 82 Ohio St.3d 490, 491-492, 696 N.E.2d 1049 (1998). Possession of less than five grams of cocaine is a felony of the fifth degree. R.C. 2925.11(C)(4)(a).

{¶ 19} " '[P]ossession' means having control over a thing or substance." R.C. 2925.01(K). Possession may be actual or constructive. *State v. Wiley*, 2d Dist. Darke No. 2011-CA-8, 2012-Ohio-512, ¶ 20, citing *State v. Cooper*, 2d Dist. Montgomery No. 24321, 2011-Ohio-5017, ¶ 61. "Actual possession exists when the circumstances indicate that an individual has or had an item within his immediate physical possession." *State v. Kingsland*, 177 Ohio App.3d 655, 2008-Ohio-4148, 895 N.E.2d 633, ¶ 13 (4th Dist.), quoting *State v. Fry*, 4th Dist. Jackson No. 03CA26, 2004-Ohio-5747, ¶ 39. Further, "[a] person has constructive possession of an item when he is conscious of the presence of the object and able to exercise dominion and control over that item, even if it is not within his immediate physical possession." *State v. Rastbichler*, 2d Dist. Montgomery No.

25753, 2014-Ohio-628, ¶ 32, quoting *State v. Mabry*, 2d Dist. Montgomery No. 21569, 2007-Ohio-1895, ¶ 18.

{¶ 20} "Dominion and control may be established by circumstantial evidence alone." *Fry* at ¶ 39, citing *State v. Taylor*, 78 Ohio St.3d 15, 676 N.E.2d 82 (1997) and *State v. Jenks*, 61 Ohio St.3d 259, 272-273, 574 N.E.2d 492 (1991). Circumstantial evidence also may be used to establish consciousness of an item's presence. *State v. Riggs*, 4th Dist. Washington No. 98CA39, 1999 WL 727952, *4 (Sept. 13, 1999).

{¶ 21} Possession "may not be inferred solely from mere access to the thing or substance through ownership or occupation of the premises upon which the thing or substance is found." R.C. 2925.01(K). While ownership alone therefore is not proof of possession, correspondingly, the State is required to prove "only * * * constructive possession, not ownership, of the drugs," in order to sustain a conviction for possession of cocaine. *State v. Greenwood*, 2d Dist. Montgomery No. 19820, 2004-Ohio-2737, ¶ 12.

{¶ 22} Although "mere proximity is in itself insufficient to establish constructive possession," "proximity to an object may constitute some evidence of constructive possession." *Wiley,* 2d Dist. Darke No. 2011-CA-8, 2012-Ohio-512, at ¶ 20, quoting *Kingsland,* 177 Ohio App.3d 655, 2008-Ohio-4148, 895 N.E.2d 633, at ¶ 13. "Thus, presence in the vicinity of contraband, coupled with another factor or factors probative of dominion or control over the contraband, may establish constructive possession." *Kingsland* at ¶ 13, citing *Riggs* at *5.

c. *Adams's Insufficient Evidence Claim*

{¶ 23} Adams contends that the evidence presented by the State was insufficient to prove beyond a reasonable doubt that she "knowingly exercised dominion and control

over" the cocaine found on the tree stump. Viewing the evidence in the light most favorable to the prosecution, we conclude that a reasonable jury could find that evidence sufficient to show that Adams possessed the cocaine present on the mirror.

{¶ 24} Testimony established that Adams was found unconscious on the ground very near a tree stump on which a mirror containing cocaine was positioned. In addition, Adams's purse containing her personal belongings was on that tree stump, next to the mirror. The cocaine was spread on the mirror as though intended for immediate use, thus permitting an inference that Adams was aware of the cocaine's presence. Moreover, no other person was shown to have been in the immediate vicinity of the tree stump while the cocaine was present on the mirror, and two police officers testified that, in their experience, drug users typically do not leave their drugs outside and unattended, especially if in powder form. (*See* Trial Tr. pp. 61, 62, 72-73). Accordingly, the evidence went beyond showing Adams's "mere proximity" to the cocaine. *See Wiley* at ¶ 20. Under the totality of the circumstances, the circumstantial evidence was sufficient to support inferences that Adams both was conscious of and had dominion or control over the cocaine, as necessary to establish her constructive possession of that drug. *See Rastbichler*, 2d Dist. Montgomery No. 25753, 2014-Ohio-628, at ¶ 32.

{¶ 25} Adams's first assignment of error challenging the sufficiency of the evidence is overruled.

*d. Adams's Manifest Weight of the Evidence Claim*

{¶ 26} In her second assignment of error, Adams contends that the jury's verdict finding her guilty of possessing cocaine was against the manifest weight of the evidence. Having reviewed the trial record, we cannot conclude that the jury "clearly lost its way" in

resolving any conflicts in the evidence. *See Thompkins*, 78 Ohio St.3d at 387, 678 N.E.2d 541. Accordingly, this case does not present the "exceptional circumstance[ ]" in which the jury's verdict should be reversed. *See Martin*, 20 Ohio App.3d at 175, 485 N.E.2d 717.

{¶ 27} Although Adams asserts on appeal that she did not live at the property where she and the cocaine were discovered, that alleged fact is not established in the record. Asked by defense counsel to confirm that Adams did not reside at the address where she was found, Sgt. Cantrell denied knowing where Adams lived. (Tr. p. 58). The defense presented no evidence indicating that Adams lived elsewhere. Nevertheless, defense counsel argued in closing that Adams "was found in the backyard of somebody else's house." (See Tr. p. 105). The jury apparently either rejected that argument or did not find it determinative as to whether Adams possessed the cocaine. Because the guilty verdict was supported by evidence unrelated to where Adams may have lived, the issue of Adams's residence was largely immaterial.

{¶ 28} Similarly, although defense counsel argued in both the opening statement and closing argument that the property where the cocaine was found was a "drug house" (Tr. pp. 17, 106), that argument also lacked substantiation in the record. Officer Adkins denied prior familiarity with that address (*id.*, p. 77), and the defense presented no affirmative evidence suggesting that the address was the site of a "drug house." Sergeant Cantrell testified that the only other people near the scene when she arrived were the medics and a man who "came running up" and said that he had called 911 after spotting an unresponsive Adams while he was walking through the alley behind the property. (Tr. p. 58). That testimony weighed against any intimation that the cocaine may have belonged to another drug user who fled after calling 911 to obtain assistance for the

overdosing Adams. No evidence was presented of any other person who may have been at the scene and responsible for placing the cocaine there.

{¶ 29} Some circumstantial evidence could be interpreted to suggest that another person may have been at or near the tree stump before Adams was found. Defense counsel argued that the presence of two syringe caps, but only one syringe, indicates that a syringe was removed from the scene before police arrived. However, the presumed absence of one syringe offers no context as to *when* that syringe may have been removed. Thus, the missing syringe argument does not compel a conclusion that someone other than Adams was responsible for the presence of cocaine or that Adams was not in possession of that cocaine.

{¶ 30} Neither does the absence of a crack pipe compel a conclusion that Adams did not possess the cocaine. Despite evidence that the cocaine was crack cocaine which most often is ingested by smoking, the BCI expert testified that crack also may be dissolved in an acidic liquid and injected. A syringe was available at the scene, and the evidence suggested that Adams had injected the drug on which she overdosed.

{¶ 31} Although Adams argues that the State failed to prove either that Adams had access to acidic liquids with which she could have dissolved the solid crack found near her, or that she in fact had used cocaine, neither proof of available means to use a drug nor actual use of the drug is an element of the offense of drug possession. *See* R.C. 2925.01(K). Even though the evidence suggested that the cocaine was set up for immediate use and the State argued that Adams likely was the intended user, the State was not required to prove that Adams had ready access to a specific means to use the cocaine in order for her to be found guilty of possessing that substance. A jury reasonably

could have found that Adams constructively possessed the cocaine.

{¶ 32} We also do not find persuasive Adams's argument that she was incapable of knowingly exercising dominion or control over the cocaine because she was "unresponsive." The fact that Adams experienced an overdose did not negate the circumstantial evidence that she was aware of and exercised control over the cocaine before she lapsed into unconsciousness. Her temporary incapacitation did not insulate her from responsibility for possessing drugs that remained in her immediate vicinity and subject to the dominion and control of no other known person while Adams was unresponsive.

{¶ 33} Finally, Adams contends, because the State failed to present fingerprint evidence or to perform DNA or drug testing on the syringe, the weight of the evidence did not demonstrate that Adams was aware of the cocaine's presence. Certainly evidence that another person's fingerprints were found or Adams's fingerprints were not found on or near the mirror and other drug-related items would have been probative of Adams's awareness of and connection to the cocaine. However, we cannot say that the absence of such physical evidence requires a reversal of the guilty verdict. As we noted, the positioning of the cocaine and the proximity of Adams and her belongings to that cocaine were sufficient to support an inference that Adams was aware of and exercised control over the cocaine. Under the totality of the circumstances, the jury did not create a manifest miscarriage of justice by concluding that Adams was guilty of possessing cocaine.

{¶ 34} Adams's second assignment of error is overruled.

### Assignment of Error #3 – Ineffective Assistance of Counsel

a. Standard of Review

{¶ 35} To establish ineffective assistance of counsel, a defendant must demonstrate both that trial counsel's conduct fell below an objective standard of reasonableness and that the errors were serious enough to create a reasonable probability that, but for the errors, the outcome of the case would have been different. *See Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *State v. Bradley,* 42 Ohio St.3d 136, 141-142, 538 N.E.2d 373 (1989). Hindsight is not permitted to distort the assessment of what was reasonable in light of counsel's perspective at the time, and a debatable decision concerning trial strategy cannot form the basis of a finding of ineffective assistance of counsel. *State v. Cook*, 65 Ohio St.3d 516, 524-525, 605 N.E.2d 70 (1992); *State v. Fields*, 2017-Ohio-400, 84 N.E.3d 193, ¶ 38 (2d Dist.). Trial counsel is also entitled to a strong presumption that his or her conduct falls within the wide range of reasonable assistance. *Strickland* at 689.

b. *Adams's Ineffective Assistance of Counsel Claim*

{¶ 36} Adams claims that she was denied the effective assistance of counsel because neither of the attorneys appointed to represent her in her successive drug possession cases[3] advised her that she could avoid conviction by obtaining a screening and seeking a referral for drug treatment, in accordance with R.C. 2925.11(B)(2)(b).

{¶ 37} That statutory provision, known as the "911 Good Samaritan Law," provides

---

[3]Adams contends that both her attorney in this case *and* her attorney in Clark C.P. No. 2016-CR-595 performed deficiently by failing to direct her to take advantage of the immunity statute. (*See* Brief for the Appellant, pp. 18, 19) (*e.g.*, "counsel from 16CR0595 was still involved in th[at] matter [when Adams was indicted in this case] and should have advised [Adams] to seek a screening in order to obtain a referral"). Because the quality of representation provided by Adams's counsel from a different case is not before us on this appeal, we will not address any alleged deficiencies in that other attorney's performance.

in pertinent part:

> (b) Subject to division (B)(2)(f) of this section, a qualified individual shall not be arrested, charged, prosecuted, convicted, or penalized pursuant to this chapter for a minor drug possession offense if all of the following apply:
>
> (i) The evidence of the obtaining, possession, or use of the controlled substance or controlled substance analog that would be the basis of the offense was obtained as a result of the qualified individual seeking the medical assistance or experiencing an overdose and needing medical assistance.
>
> (ii) Subject to division (B)(2)(g) of this section, within thirty days after seeking or obtaining the medical assistance, the qualified individual seeks and obtains a screening and receives a referral for treatment from a community addiction services provider or a properly credentialed addiction treatment professional.
>
> (iii) Subject to division (B)(2)(g) of this section, the qualified individual who obtains a screening and receives a referral for treatment under division (B)(2)(b)(ii) of this section, upon the request of any prosecuting attorney, submits documentation to the prosecuting attorney that verifies that the qualified individual satisfied the requirements of that division. The documentation shall be limited to the date and time of the screening obtained and referral received.

R.C. 2925.11(B)(2)(b), effective September 13, 2016. *See State v. Melms*, 2018-Ohio-1947, 101 N.E.3d 747, ¶ 1 (2d Dist.).

**{¶ 38}** In addition, pursuant to R.C. 2925.11(B)(2)(a)(viii),

"Qualified individual" means *a person who is not on community control* or post-release control and is a person acting in good faith who seeks or obtains medical assistance for another person who is experiencing a drug overdose, a person who experiences a drug overdose and who seeks medical assistance for that overdose, or a person who is the subject of another person seeking or obtaining medical assistance for that overdose as described in division (B)(2)(b) of this section.

(Emphasis added.)

**{¶ 39}** The record reflects that at the time of her September 9, 2017 overdose (which led to the drug possession charge in this case), Adams was serving community control as a result of her prior conviction for possession of cocaine in Clark C.P. No. 2016-CR-595. (5/15/18 Disposition Tr. p. 3). Consequently, under R.C. 2925.11(B)(2)(a)(viii), Adams was not a "qualified individual" entitled to take advantage of R.C. 2925.11(B)(2)(b)'s immunity from prosecution. Her trial attorney in this case cannot have performed deficiently by failing to advise her of that statutory immunity.

**{¶ 40}** Adams's third assignment of error is overruled.

### *Conclusion*

**{¶ 41}** The judgment of the trial court will be affirmed.

.. . . . . . . . . . . . .

DONOVAN, J. and HALL, J., concur.

Copies sent to:

Andrew P. Pickering
Frank Matthew Batz
Hon. Richard J. O'Neill