The STATE of Ohio, Appellee,

v.

DEMUS, Appellant.

[Cite as *State v. Demus*, 192 Ohio App.3d 181, 2011-Ohio-124.]

Court of Appeals of Ohio,
Second District, Montgomery County.

No. 23801.

Decided Jan. 14, 2011.

Mathias H. Heck Jr., Montgomery County Prosecuting Attorney, and Andrew T. French, Assistant Prosecuting Attorney, for appellee.

Daniel J. O'Brien, for appellant.

DONOVAN, Judge.

{¶ 1} Defendant-appellant, Ricky D. Demus, appeals his conviction and sentence for one count of possession of heroin in an amount greater than 50 grams but less than 250 grams, in violation of R.C. 2925.11(A), a felony of the first degree. After a jury trial, Demus was found guilty of the charged offense and was sentenced to a term of seven years in prison. Demus filed a timely notice of appeal with this court.

I

{¶ 2} The incident that forms the basis for the instant appeal occurred on June 10, 2009, at approximately 9:00 p.m., when Officer Ronald Smith of the Trotwood Police Department observed a maroon Chrysler Sebring drive past him on Grand Avenue in Dayton, Ohio. Officer Smith was patrolling the area in and surrounding the Dayton View neighborhood as part of his assignment as a member of the Community Initiative to Reduce Gun Violence Task Force ("CIRGV"). The CIRGV Task Force is a multijurisdictional unit consisting of deputies from the Montgomery County Sheriff's Office, the Dayton Police Department, the Trotwood Police Department, the Montgomery County Prosecutor's Office, and the FBI Street Task Force to help reduce gun, gang, and drug violence in Montgomery County. Officer Smith testified that the Dayton View neighborhood was known for being a high-crime area where gun violence was prevalent.

{¶ 3} As the maroon Sebring passed him, Officer Smith noticed that while all the other lights on the vehicle were functioning correctly, the rear light over the license plate was out. Officer Smith testified that he made a U-turn and began to pursue the vehicle in order to initiate a traffic stop. After he turned his police cruiser around, Officer Smith observed the driver of the Sebring, who was later identified as the appellant, Ricky Demus, park his vehicle at 1910 West Grand Avenue, exit the vehicle, and begin walking across the street. Officer Smith immediately pulled in behind the Sebring and parked his cruiser. Officer Smith then exited his cruiser and ordered Demus back to his vehicle.

{¶ 4} Once Demus returned, Officer Smith informed him about the inoperative license-plate light and asked to see his driver's license. Officer Smith testified that at this point, he observed that Demus's hands were visibly shaking and that he appeared to be very nervous. Officer Smith also noticed that Demus refused to make eye contact with him. Additionally, when Demus reached into his back pocket to retrieve his wallet, Officer Smith noticed that he spent an inordinate amount of time "fishing around" in his pocket before he removed his wallet. In light of Demus's nervous behavior and the fact that he was patrolling alone in a

dangerous neighborhood, Officer Smith decided to handcuff Demus for the duration of the traffic stop.

{¶ 5} Officer Smith ordered Demus to turn around and put his hands behind his back. Feigning compliance, Demus turned around. Before Officer Smith could get his handcuffs out, however, Demus ran, and Officer Smith gave chase. Demus dropped his driver's license on the ground shortly after he took off running. Officer Smith testified that Demus also reached into his back pocket, removed an object, and threw it behind him. Officer Smith decided to stop chasing Demus at that point. Officer Smith retrieved Demus's driver's license, as well as the object he threw. The object retrieved was a plastic baggie that held two cylinders containing approximately 56 grams of heroin. Officer Smith broadcasted a description of Demus to other police officers patrolling in the same area, and he was eventually arrested.

{¶ 6} Demus was subsequently charged by indictment with one count of possession of heroin in an amount greater than 50 grams but less than 250 grams on September 4, 2009. At his arraignment on September 10, 2009, Demus pleaded not guilty. On September 24, 2009, Demus filed a motion to suppress the observations of Officer Smith after the initial stop, as well as the seized heroin. After a hearing that was held on October 9, 2009, the trial court issued a written decision overruling McCrary's suppression motion.

{¶ 7} After a jury trial held on November 12 and 13, 2009, Demus was found guilty for possession of heroin. On November 30, 2009, the court sentenced Demus to seven years in prison.

{¶ 8} It is from this judgment that Demus now appeals.

II

{¶ 9} Because they are interrelated, Demus's first and second assignments of error will be discussed together as follows:

{¶ 10} "The trial court prejudicially erred in finding that the arresting officer made a constitutionally valid traffic stop of the defendant-appellant."

{¶ 11} "The trial court prejudicially erred in finding the arresting officer had any legal justification to detain, continue to detain and finally arrest the defendant-appellant after the initial invalid stop and defendant-appellant's detention, continued detention and arrest were all the 'fruits of the poisonous tree' under *Wong Sun* and in any event after the purpose of the original stop should have been completed."

{¶ 12} In his first and second assignments of error, Demus contends that the trial court erred in overruling his motion to suppress because Officer Smith's

initial traffic stop for the inoperative license-plate light was unlawful. In support of his argument, Demus notes that the trial court relied on an incorrect section of the Ohio Revised Code when stating which traffic offense Demus committed. That error, he says, provided the initial basis for the stop. At the suppression hearing, Officer Smith testified that he had believed that Demus violated R.C. 4503.21, which requires that the front and rear license plates on all motor vehicles be displayed in plain view, be securely fastened, and not be covered by any material that obstructs their visibility. The trial court relied on Officer Smith's testimony when it overruled Demus's motion to suppress. The state concedes that there is insufficient evidence to establish that Demus violated R.C. 4503.21 in the instant case. The state, however, argues that this issue was not raised by Demus at the motion to suppress and is waived for the purposes of the instant appeal.

█ {¶ 13} Under Crim.R. 47, a motion, including a motion to suppress evidence, must "state with particularity the grounds upon which it is made and shall set forth the relief or order sought." Motions to suppress evidence must be made prior to trial. Crim.R. 12(C)(3). If a motion to suppress fails to state a particular basis for relief, that issue is waived and cannot be argued on appeal. See, e.g., *State v. Cullins*, Montgomery App. No. 21881, 2007-Ohio-5978, 2007 WL 3309638, at ¶ 10; *State v. Carter*, Montgomery App. No. 21999, 2008-Ohio-2588, 2008 WL 2222717, at ¶ 20.

█ {¶ 14} "The prosecutor must know the grounds of the challenge in order to prepare his case, and the court must know the grounds of the challenge in order to rule on evidentiary issues at the hearing and properly dispose of the merits. Therefore, the defendant must make clear the grounds upon which he challenges the submission of evidence pursuant to a warrantless search or seizure. Failure on the part of the defendant to adequately raise the basis of his challenge constitutes a waiver of that issue on appeal." (Citations omitted.) *Xenia v. Wallace* (1988), 37 Ohio St.3d 216, 218, 524 N.E.2d 889.

█ {¶ 15} Demus's written motion sought to suppress "the observations of the officer for the reasons that the officer lacked reasonable suspicion upon which to stop, detain and arrest the Defendant and overall lacked probable cause to arrest the Defendant." The motion thus informed the state that, among other things, Demus was challenging Officer Smith's basis for the initial stop. At the hearing, however, Demus made no challenge to being stopped for the equipment violation. Rather, Demus's counsel challenged the legality of Officer Smith's decision to expand the traffic stop into an arrest. In his post-hearing memorandum, Demus even concedes that "the officer's stop may have been reasonable." We agree with the state that Demus's decision to rely at the suppression hearing

solely on his argument that his detention or arrest was unlawful constituted a waiver of the additional arguments made in his motion to suppress, including any argument that there was no legal basis for the initial stop. Accordingly, Demus has not preserved this issue for appellate review, and we need not consider it.

{¶ 16} Even if Demus had not waived his challenge to the legality of the initial traffic stop, we would conclude that the trial court did not err in overruling his motion to suppress.

██ {¶ 17} Regarding a motion to suppress, "'the trial court assumes the role of trier of facts and is in the best position to resolve questions of fact and evaluate the credibility of witnesses.'" *State v. Hopfer* (1996), 112 Ohio App.3d 521, 548, 679 N.E.2d 321, quoting *State v. Venham* (1994), 96 Ohio App.3d 649, 653, 645 N.E.2d 831. The court of appeals must accept the trial court's findings of fact if they are supported by competent, credible evidence in the record. *State v. Isaac*, Montgomery App. No. 20662, 2005-Ohio-3733, 2005 WL 1707019, citing *State v. Retherford* (1994), 93 Ohio App.3d 586, 639 N.E.2d 498. Accepting those facts as true, the appellate court must then determine, as a matter of law and without deference to the trial court's legal conclusion, whether the applicable legal standard is satisfied. Id.

██ {¶ 18} R.C. 4513.05(A) provides:

{¶ 19} "Every motor vehicle * * * shall be equipped with at least one tail light mounted on the rear which, when lighted, shall emit a red light visible from a distance of five hundred feet to the rear * * *. *Either a tail light or a separate light shall be so constructed and placed as to illuminate with a white light the rear registration plate,* when such registration plate is required, and render it legible from a distance of fifty feet to the rear. * * * *Any tail light, together with any separate light for illuminating the rear registration plate, shall be so wired as to be lighted whenever the headlights or auxiliary driving lights are lighted* * * *."

{¶ 20} As previously stated, Demus did not dispute Officer Smith's testimony regarding the inoperative license-plate light on his car. Moreover, Officer Smith testified that this was the original basis for the traffic stop, and the trial court found those facts to be true. In doing so, the court relied on the wrong section of the Ohio Revised Code. Ultimately, however, the court's mistake in this regard does not affect the outcome of the proceedings.

{¶ 21} The record establishes that the trial court's factual finding that the license-plate light on Demus's vehicle was not working was supported by competent, credible evidence, and we are bound to accept the court's findings in this regard. It is our responsibility to determine whether the applicable legal standard is supported by the court's findings of fact. In the instant case, the

evidence established that Demus's license-plate-light was inoperative in violation of R.C. 4513.05(A), and therefore, Officer Smith was justified in stopping Demus in order to issue a traffic citation. Although it relied on the wrong statute, R.C. 4503.21, the court reached the correct result when it held that there was a legal basis for the traffic stop. Because the evidence adduced at the hearing established that Demus committed a license-plate-light offense in violation of R.C. 4513.05(A), the trial court did not err when it overruled his motion to suppress.

{¶ 22} Demus's first and second assignments of error are overruled.

### III

{¶ 23} Demus's third and final assignment of error is as follows:

{¶ 24} "The court prejudicially erred in its demeaning and prejudicial treatment of the defense counsel during the trial and especially during final argument to the jury when the defense counsel made factually relevant and legitimate arguments and correct statements of the law and facts to the jury concerning the defendant's detention which had arguably, in fact and law, turned into an arrest and the court wrongfully told the jury, twice, in final argument, that defense counsel deliberating misquided [sic] the facts and law to the jury."

{¶ 25} In his final assignment, Demus argues that he was prejudiced and denied his right to a fair trial when the trial court, "in threatening and belligerent tones," ordered the jury to disregard statements made by defense counsel during closing arguments in regards to the legal definition of reasonable doubt. The alleged prejudice occurred during the following exchange:

{¶ 26} "Defense Counsel: * * * It's just not possible. It is not possible the version of events as the officer testified to them.

{¶ 27} "So what we ask is that when you consider all of the evidence, and the testimony of all of the witnesses, and the photographs provided by the State that show the area where the officer says he found this item, when you look at that and you figure out whether or not what he testified he saw is actually possible, ask yourself beyond a reasonable doubt that Mr. Demus threw that object into that area. *If you're thinking in the back of your head that you want more* [sic]. *You want something else. You want a witness that saw the actual chase, the entire chase. You want somebody that saw something in that alley or something in that apartment building where defendant claims to have ran, if you want something else that ties Mr. Demus to these drugs, there's your reasonable doubt.*

{¶ 28} "The State: Objection.

{¶ 29} "The Court: Sustained. That is not the law and the jury will disregard that.

{¶ 30} "Defense Counsel: And I apologize. I don't intend to mislead anybody. What I'm saying is if there is doubt, if there is a reasonable doubt in your mind,

and the Court will give you the instruction on what the reasonable doubt is, if there is something more that you want, I ask the jury to consider everything in its entirety and find the defendant not guilty."

{¶ 31} Upon review, we must caution the trial court of the risks created when an editorial comment was injected into a ruling sustaining the state's objection. To suggest "that is not the law and the jury will disregard that," may have been misconstrued by the jury as a correction of the reasonable-doubt standard. However, having viewed the video of that portion of the closing arguments, we do not find the court's strongly worded comment to have been made in a belligerent fashion. Defense counsel, however inartfully, was merely attempting to explain that if the jury found itself wanting more evidence of Demus's guilt, in addition to the testimony of Officer Smith, then the state had failed to meet its burden of proof beyond a reasonable doubt. This was not an incorrect statement of law regarding the burden of proof borne by the state of Ohio. Thus, the trial court erred when it sustained the state's objection and reprimanded defense counsel. The court's remarks were unnecessary and ill-advised.

{¶ 32} Accordingly, we find that the trial court's decision to sustain the state's objection to defense counsel's remarks regarding the reasonable doubt standard made during closing arguments was error. However, we conclude that the error was harmless based on the overwhelming evidence adduced at trial that established that Demus was guilty of the charged offense. We find it to be significant that the court gave the proper instruction to the jury on reasonable doubt in its oral and written instructions at the conclusion of trial. Thus, we find that the court's comments did not cause a manifest injustice, nor did they have a high probability of changing the outcome of the trial. "Challenged statements and actions of the trial judge in a criminal case will not justify a reversal of the conviction, where the defendant has failed in light of the circumstances under which the incident[s] occurred to demonstrate prejudice." *State v. Wade* (1978), 53 Ohio St.2d 182, 7 O.O.3d 362, 373 N.E.2d 1244, vacated on other grounds (1978), 438 U.S. 911, 98 S.Ct. 3138, 57 L.Ed.2d 1157. In the instant case, Demus has failed to establish that he was prejudiced by the statement by the trial court.

{¶ 33} Demus's third assignment of error is overruled.

IV

{¶ 34} All of his assignments of error having been overruled, the judgment of the trial court is affirmed.

Judgment affirmed.

Grady, P.J., and Froelich, J., concur.