[Cite as *State v. Fasline*, 2014-Ohio-1470.]

STATE OF OHIO, MAHONING COUNTY

IN THE COURT OF APPEALS

SEVENTH DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO, | ) | |
| | ) | CASE NO.    12 MA 221 |
| PLAINTIFF-APPELLANT, | ) | |
| | ) | |
| VS. | ) | O P I N I O N |
| | ) | |
| FRANCIS FASLINE, | ) | |
| | ) | |
| DEFENDANT-APPELLEE. | ) | |


CHARACTER OF PROCEEDINGS:        Criminal Appeal from Common Pleas
                                 Court, Case No. 11CR73.


JUDGMENT:                        Affirmed.


APPEARANCES:
For Plaintiff-Appellant:         Attorney Paul Gains
                                 Prosecuting Attorney
                                 Attorney Ralph Rivera
                                 Assistant Prosecuting Attorney
                                 21 West Boardman Street, 6th Floor
                                 Youngstown, Ohio  44503


For Defendant-Appellee:          Attorney John Juhasz
                                 7081 West Boulevard, Suite 4
                                 Youngstown, Ohio  44512


JUDGES:
Hon. Joseph J. Vukovich
Hon. Cheryl L. Waite
Hon. Frank D. Celebrezze, Jr.,
        Judge of the Eighth District Court of Appeals,
        Sitting by Assignment.

                                 Dated:  March 31, 2014

VUKOVICH, J.

{¶1} Plaintiff-appellant State of Ohio appeals the Mahoning County Common Pleas Court's suppression ruling. The trial court determined that the "fruits" of the search were improperly received. For the reasons expressed below, the judgment of the trial court is hereby affirmed.

<u>Statement of the Case and Facts</u>

{¶2} On November 19, 2010, at 11:59 p.m., residents at a fraternity house located at 850 Pennsylvania Avenue heard a loud explosion in the vacant lot next to their house. Defendant's Exhibit 1. The fraternity president told the investigating officers that he saw some people from the residence located at 825 Pennsylvania Avenue in the vacant lot. Defendant's Exhibit 1. The vacant lot was searched and the investigating officers found what appeared to be an explosive device; that device was taken to Youngstown Police Department Bomb Squad Unit. Defendant's Exhibit 1.

{¶3} Randy Williams, Lieutenant with the Youngstown State University Police Department and investigator with the Mahoning Valley Law Enforcement Task Force, was assigned to the case some time thereafter. Tr. 5, 26. At some point, Officer Pusateri of the Youngstown State University Police Department told him that Fasline, who lived at the residence located at 825 Pennsylvania Avenue, might be involved with the explosive device, i.e. a firework, found on the vacant lot. Tr. 28. Officer Pusateri's stepson is the one who relayed this information to Officer Pusateri. Tr. 30, 33. There was also information that Fasline's family owns a fireworks business in Pennsylvania. Tr. 8.

{¶4} On the morning of December 1, 2010, Lieutenant Williams and Special Agent Jay Gebhart of the Bureau of Alcohol, Tobacco & Firearms attempted to do a "knock and talk" at the residence located at 825 Pennsylvania Avenue. Tr. 8-9; State's Exhibit 1. The officers wanted to get consent from Fasline to search the house for evidence that linked him to the firework/explosive. However, before arriving at the house, they noticed Fasline get into his car and drive away. The

officers then followed Fasline and initiated a traffic stop. During the stop, Fasline consented to a search of his car and home.

{¶5} The search of his car produced no illegal contraband. The officers then followed Fasline to his house. At the house, Special Agent Gebhart began reading the consent to search form, however, Fasline interrupted him and stated that he knew what they were there for and he would go get it. Tr. 13. They followed him up to his bedroom where he produced a black duffle bag full of tubes that were exactly like the tube that was found in the vacant lot. The tubes had wicks that you would light to set off the firework/explosive. Tr. 14. He also gave them some cardboard boxes with some powder residue in them, and a "spatula-type of thing" that is used to mix up the chemicals. Tr. 14.

{¶6} As a result of this evidence, Fasline was charged with Illegal Manufacturing or Processing Explosives in violation of R.C. 2923.17(B)(E), a second-degree felony; Assembly or Possession of Chemicals in violation of R.C. 2909.28(A)(C), a fourth-degree felony; and Manufacturing of Fireworks, in violation of R.C. 3743.60(A), a third-degree felony pursuant to R.C. 37434.99(A). 01/20/11 Indictment.

{¶7} Fasline pled not guilty, waived his right to a speedy trial, filed discovery motions and filed a motion to suppress. The state filed a motion in opposition to suppression. Fasline acquired new counsel and filed a Supplemental Motion to Suppress. A hearing was held on the suppression motions. During this hearing, the facts surrounding the stop and the consent to search were discussed in depth. 11/08/12 Hearing. Following the hearing, counsel for each party filed post-hearing motions arguing their respective positions.

{¶8} After considering the parties' arguments, the trial court granted Fasline's suppression motion. The state immediately appealed.

### Assignment of Error

{¶9} "The trial court should have denied Appellant's motion to suppress, because competent and credible evidence established that defendant's consent to

search his vehicle and residence was voluntarily given, and the record does not demonstrate that the officers' actions were coercive."

**{¶10}** The trial court found that considering the events that led up to, and the events that occurred during the traffic stop, the officers coerced Fasline in consenting to the search and returning to his house immediately for the search. It found that "'fruits' of the search received after returning to 825 Pennsylvania Avenue were improperly received." 12/14/12 J.E. It further added, "Bolstering the questionable conduct of the officers the items turned over to the officers by Fasline at the premises were given before he had signed a consent search to the premises." 12/14/12 J.E.

**{¶11}** The standard of review in an appeal of a suppression issue is two-fold. *State v. Dabney,* 7th Dist. No. 02BE31, 2003–Ohio–5141, at ¶ 9, citing *State v. Lloyd*, 126 Ohio App.3d 95, 100–101, 709 N.E.2d 913 (7th Dist.1998). Since the trial court is in the best position to evaluate witness credibility, an appellate court must uphold the trial court's findings of fact if they are supported by competent, credible evidence. *Id.,* citing *State v. Winand*, 116 Ohio App.3d 286, 288, 688 N.E.2d 9 (7th Dist.1996), citing *Tallmadge v. McCoy*, 96 Ohio App.3d 604, 608, 645 N.E.2d 802 (9th Dist.1994). However, once an appellate court has accepted those facts as true, the court must independently determine as a matter of law whether the trial court met the applicable legal standard. *Id.,* citing *State v. Clayton*, 85 Ohio App.3d 623, 627, 620 N.E.2d 906 (4th Dist.1993). This determination is a question of law of which an appellate court cannot give deference to the trial court's conclusion. *Id.,* citing *Lloyd.*

**{¶12}** In this case, the state concedes that the trial court correctly applied the law. The state's argument solely concerns the trial court's finding that Fasline was coerced into consenting to the search of his residence. That holding we review for an abuse of discretion.

**{¶13}** The Fourth Amendment to the United States Constitution and Section 14, Article I of the Ohio Constitution, protect individuals from unreasonable searches and seizures. *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); *State v. Pressley,* 2d Dist. No. 24852, 2012–Ohio–4083, ¶ 18. "[P]hysical entry of the home is the chief evil against which the wording of the Fourth Amendment was

directed." *Payton v. New York,* 445 U.S. 573, 585, 100 S.Ct. 1371 (1980). It is a basic principle of Fourth Amendment law that searches and seizures inside a home without a warrant are presumptively unreasonable. *Id.* at 586.

**{¶14}** At a suppression hearing, the state bears the burden of establishing that a warrantless search and seizure falls within one of the exceptions to the warrant requirement and that it meets Fourth Amendment standards of reasonableness. *State v. Kessler,* 53 Ohio St.2d 204, 207 (1978); *Maumee v. Weisner,* 87 Ohio St.3d 295, 297 (1999).

**{¶15}** In the appellate brief, three separate arguments are set forth by the state as to why the trial court's suppression ruling is incorrect. The first addresses the traffic stop and contends that it was legal. The second concerns the consent to search the residence and asserts that it was voluntarily given. The third is an alternative argument to the second argument. The state asserts that even if we find that consent was not voluntary, there were exigent circumstances that permitted the warrantless search. However, as stated above the state's primary contention is that the trial court incorrectly determined that Fasline was coerced into consenting to the search of his residence.

## 1. Traffic Stop

**{¶16}** As aforementioned, when Lieutenant Williams and Special Agent Gebhart were approaching 825 Pennsylvania Avenue in an attempt to make contact with Fasline at his residence, they observed Fasline in his car leaving. Tr. 9. Lieutenant Williams testified that they proceeded to attempt to follow Fasline. Tr. 9. He explained that Fasline proceeded northbound on Pennsylvania Avenue and was driving at a high rate of speed. By the time they got to the intersection of Pennsylvania and Park Avenues, he had already turned off of Park Avenue onto Elm Street. Tr. 9. Lieutenant Williams indicated that they continued to follow him and finally caught up to Fasline on Youngstown-Hubbard Road near Winkle Electric. Tr. 9. At that point, they initiated a stop by turning on the lights and sirens in the unmarked car they were operating. Tr. 9, 36. The officers were not in uniform; they were in plain clothes. Tr. 36. Lieutenant Williams stated that Fasline drove "like an

idiot", that the road conditions were snowy and wet and that he was driving recklessly in violation of the traffic laws. Tr. 9-10.

**{¶17}** During the testimony, Lieutenant Williams admitted that there were two reasons why Fasline was stopped. Tr. 37-39. One was because he was driving recklessly, i.e. committing a traffic offense. Tr. 37-39. And the second reason was because the officers wanted to talk to him about giving consent to search his residence. Tr. 37-39. No citation for driving recklessly was issued. Tr. 37. In fact, Lieutenant Williams indicated that he has not written a citation in "five or six, ten years" and admitted that he did not have any tickets. Tr. 37.

**{¶18}** The state asserts that this traffic stop did not violate the Fourth Amendment to the United States Constitution.

**{¶19}** The Fourth Amendment to the United States Constitution insulates individuals from unreasonable searches and seizures. *United States v. Hensley,* 469 U.S. 221, 226, 105 S.Ct. 675 (1985). A traffic stop initiated by a law enforcement officer implicates the Fourth Amendment and must comply with the Fourth Amendment's general reasonableness requirement. *Whren v. United States,* 517 U.S. 806, 809, 116 S.Ct. 1769 (1996). To justify a traffic stop, an officer must have a reasonable suspicion of criminal activity. *Maumee,* 87 Ohio St.3d at 299. *Accord Terry,* 392 U.S. at 22. A police officer has sufficient cause to conduct a traffic stop if the officer witnesses a violation of a traffic law. *State v. Campbell,* 9th Dist. No. 05CA0032–M, 2005–Ohio–4361, ¶ 11.

**{¶20}** The Ohio Supreme Court has stated that:

> Where a police officer stops a vehicle based on probable cause that a traffic violation has occurred or was occurring, the stop is not unreasonable under the Fourth Amendment to the United States Constitution even if the officer had some ulterior motive for making the stop, such as a suspicion that the violator was engaging in more nefarious criminal activity. (*United States v. Ferguson* [C.A.6, 1993], 8 F.3d 385, applied and followed.)

*Dayton v. Erickson*, 76 Ohio St.3d 3, 665 N.E.2d 1091 (1996), syllabus.

**{¶21}** Here, the trial court did not find that the initial traffic stop was unreasonable; the trial court did not state that it did not believe Lieutenant Williams' testimony that Fasline was driving recklessly. Therefore, considering the above law, the testimony, that credibility is best left to the trier of fact, and the fact that driving recklessly does constitute a traffic offense, the initial stop was not unreasonable under the Fourth Amendment. It is inconsequential that these officers had an ulterior motive for making the stop and had no intention of issuing a citation.

**{¶22}** Therefore, stopping Fasline for a traffic violation did not violate the Fourth Amendment. However, this does not mean that what occurred during the stop was reasonable under the Fourth Amendment. "The lawfulness of the initial stop will not support a 'fishing expedition' for evidence of crime." *State v. Dieckhoner,* 8th Dist. No. 96694, 2012–Ohio–805, ¶ 13.

## 2. Consent

**{¶23}** During the stop, Fasline consented to two searches – he consented to the search of his vehicle and he consented to the search of his residence.

**{¶24}** Consent is a well-recognized exception to the warrant requirement. *Schneckloth v. Bustamonte*, 412 U.S. 218, 219, 93 S.Ct. 2041 (1973). "Whether a consent to search was voluntary or was the product of duress or coercion, either express or implied, is a question of fact to be determined from the totality of the circumstances." *State v. Lett,* 11th Dist. No. 2008–T–0116, 2009-Ohio-2796, ¶ 32, citing *Schneckloth* at 248-249 and *State v. Chapman,* 97 Ohio App.3d 687, 691, 647 N.E.2d 504 (1st Dist.1994). Thus, this is a determination best left to the trier of fact, i.e. the court, and will not be reversed unless it is not supported by competent credible evidence. *Dabney*, 2003-Ohio-5141, at ¶ 9.

**{¶25}** As aforementioned, the state conceded at oral argument that the trial court correctly applied the law. The state's main contention against the trial court's decision was its finding that consent was the result of coercion.

**{¶26}** The facts presented at the suppression hearing were that the officers stopped Fasline and informed him that he was driving "like an idiot." Tr. 11. During the stop, the officers also talked to him about the fireworks and asked him if he knew

anything about the explosion that occurred a week prior in the vacant lot next to his residence. State's Exhibit 1 – Lieutenant Williams' Report. He responded that he heard it, but did not know anything about it. State's Exhibit 1; Tr. 42-43. They then asked to search his car; he consented and informed them that he has a firework in his car. State's Exhibit 1. Lieutenant Williams testified that when Fasline was asked if they could search his car, Fasline was free to leave. However, the Lieutenant acknowledged that Fasline was not informed of that fact. Tr. 49-50.

{¶27} During the search of the car, the officers found a legal firework. State's Exhibit 1; Tr. 11. Fasline was then asked whether he has any large fireworks at his residence. State's Exhibit 1. He indicated that he did not. State's Exhibit 1. The officers then asked him whether they can search his residence. State's Exhibit 1; Tr. 44. He informed them that they can, but he would like to wait an hour so that he can cash a check. State's Exhibit 1; Tr. 44. Special Agent Gebhart asked him to do it now so that they can get the case closed. State's Exhibit 1, Tr. 12, 44. Fasline agreed. State's Exhibit 1; Tr. 12. Lieutenant Williams testified that the need to have the house searched immediately was because he did not want his lunch delayed. Tr. 44.

{¶28} Given these facts, the trial court's conclusion that the consent was not voluntary is supported by competent credible evidence. This encounter seems to be the prime example of a fishing expedition. As the trial court explained, the only facts that the officers had that Fasline was involved in the explosion on November 19, 2010, in the vacant lot next to his residence were from double hearsay; Officer Pusateri told Lieutenant Williams that his stepson told him Fasline was involved in the explosion. Furthermore, the information and evidence obtained during the stop was that Fasline stated he had no large fireworks at his house and that a legal firework was found in his car. Even though their questioning and search of his car produced no evidence of illegal activity, the officers pushed for him to give consent to search his home. Tr. 55. Assuming without deciding that consent to search the vehicle was voluntarily given and reasonable under the Fourth Amendment, consent to search the vehicle did not give the officers carte blanche to continue to detain Fasline until

they got him to consent to the search. Given these circumstances, the trial court could reasonably find that a reasonable person would not have believed that he had the freedom to refuse to answer further questions, refuse to give consent to search and could in fact leave the scene.

{¶29} Therefore, since the determination of whether consent to search was voluntary or was the product of coercion is a question of fact to be determined from the totality of the circumstances, and the trial court had competent credible evidence to support the conclusion that consent to search the home was not voluntary, we defer to that decision. *Lett,* 2009-Ohio-2796, ¶ 32 (consent is a question of fact). The trial court did not abuse its discretion in finding that consent was not voluntary.

### 3. Exigent Circumstances

{¶30} The final argument is that even if the consent was not voluntary, exigent circumstances existed that would allow a warrantless search of the residence.

{¶31} Emergency and/or exigent circumstances are a well-established exception to the Fourth Amendment's warrant requirement. *State v. Andrews,* 177 Ohio App.3d 593, 2008-Ohio-3993, 895 N.E.2d 585,¶ 23 (11th Dist.); *State v. Berry,* 167 Ohio App.3d 206, 2006-Ohio-3035, 854 N.E.2d 558,¶ 12 (2d Dist.). We have previously explained that the United States Supreme Court has identified four main types of exigent circumstances. *State v. Telshaw*, 195 Ohio App.3d 596, 607, 2011-Ohio-3373, 961 N.E.2d 223, ¶ 25 (7th Dist.). They are: hot pursuit of a fleeing felon, imminent destruction of evidence, the need to prevent escape, the risk of harm to police or others, and the emergency-aid exception. *Id.* citing *Minnesota v. Olson*, 495 U.S. 91, 100, 110 S.Ct. 1684, 109 L.Ed.2d 85 (1990).

{¶32} The state appears to focus on the emergency-aid exception. It contends that exigent circumstances exist because the firework/explosive at issue here poses a danger to the community if it goes off.

{¶33} The key issue for this exception is "whether the officers 'had reasonable grounds to believe that some kind of emergency existed * * *. The officer must be able to point to specific and articulable facts, which, taken with rational inferences from those facts, reasonably warrant intrusion into protected areas.'" *Id.,* quoting

*State v. White,* 175 Ohio App.3d 302, 2008-Ohio-657, 886 N.E.2d 904, ¶ 17 (9th Dist.). "Under the emergency-aid exception, an officer has both a right and a duty to enter the premises and investigate." *Id.*, citing *State v. Applegate*, 68 Ohio St.3d 348, 350, 626 N.E.2d 942 (1994).

**{¶34}** Lieutenant Williams testified that the Bomb Squad was called to take possession of the material that was seized "due to the fact that if mixed it was very volatile." Tr. 15. He stated that the Youngstown Bomb Squad told his department that the device found in the vacant lot was a very dangerous device. Tr. 40.

**{¶35}** Those facts could lend support to an emergency or exigent circumstance that would permit a warrantless search. However, an emergency or exigent circumstance argument was not made to the trial court. Arguments that are not raised to the trial court, but are raised to the appeals court, are deemed waived. *State v. Demus*, 192 Ohio App.3d 181, 2011-Ohio-124, 948 N.E.2d 508, ¶ 13 (2d Dist.) (Under Crim.R. 47 motions to suppress must be stated with particularity. Thus, if a motion to suppress fails to state a particular basis for relief, that issue is waived and cannot be argued on appeal). Furthermore, and potentially more problematic, is the fact that Lieutenant Williams' testimony indicates several times that it was not an emergency to enter the house and search.

> Q. So you and I can agree that there's not some sense of emergency or urgency when you go out there on December 1st [the day the knock and talk was attempted]; correct?
> A. Correct.

Tr. 21.

**{¶36}** Lieutenant Williams was later asked about why they were pushing for Fasline to consent to the immediate search of the house:

> Q. And Mr. Fasline indicates that he would do that [go back to the house for the search to be conducted] but he would do it at a point in time after he went and cashed a check and talked to his parents?
> A. Yeah, I think he wanted an hour to do it.
> Q. Okay. And you told him that he couldn't do that; correct?

A. That isn't correct.

Q. What did you tell him?

A. I believe Special Agent Gebhart asked him if we could do it now so we could clear up the complaint and be done with it.

Q. What was the emergent nature of clearing up the complaint?

A. Lunch.

* * *

Q. Okay. If he hadn't agreed to go back to the house at that time what would you have done?

A. We would have went and sat on the house.

* * *

Q. Okay. So you would have gone and sat on the house?

A. Yes.

Q. Okay.

A. We would have waited.

Tr. 44, 50, 51.

**{¶37}** Thus, the only reason the officers did not want the search to be delayed was because they did not want their lunch delayed. That is clearly not an exigent circumstance. Moreover, there is no indication in this testimony that the officers wanted to get to the house to search it because they were afraid that an explosive device or firework would go off and someone in the community would be injured. In fact, the officer clearly indicates that they could have waited.

**{¶38}** Law-enforcement agents "bear a heavy burden when attempting to demonstrate an urgent need that might justify warrantless searches and arrests." *Welsh v. Wisconsin*, 466 U.S. 740, 749–750, 104 S.Ct. 2091 (1984). The state must "demonstrate exigent circumstances that overcome the presumption of unreasonableness that attaches to all warrantless home entries." *Id.* at 750. Given the testimony and the above analysis, that burden was not met. The state's argument that there were exigent or emergency circumstances for the warrantless search fails.

## Conclusion

**{¶39}** Although the initial stop did not violate the Fourth Amendment, the trial court's conclusion that the actions taken by the officers during the stop to obtain consent to search the residence did violate Fasline's Fourth Amendment rights is supported by competent credible evidence and was not an abuse of discretion. The judgment of the trial court is hereby affirmed.

Waite, J., concurs.
Celebrezze, J., concurs.